## COMMERCE TRUST CO. OF BALTIMORE, MD., v. CHANDLER et al.

(Circuit Court of Appeals, First Circuit.   February 5, 1924.)

No. 1686.

Corporations ⬦⟵560(1)—Receivers entitled to contest validity of mortgage.

Receivers of an insolvent corporation *held* entitled to contest the validity of an alleged mortgage on the ground that it did not comply with Massachusetts Business Law (St. 1903, c. 437, § 40), requiring the vote of two-thirds of all the stock, though the stockholders did not contest its validity.

Appeal from the District Court of the United States for the District of Massachusetts; George Hutchins Bingham, Judge.

Suit by the Haskell Manufacturing Company against the Nelson Blower & Furnace Company. On an intervening petition by the Commerce Trust Company of Baltimore, Md., against F. Alexander Chandler and another, coreceivers. From the decree, the intervening petitioner appeals. Affirmed.

Robert G. Dodge, of Boston, Mass. (Asa S. Allen, of Boston, Mass., on the brief), for appellant.

Judd Dewey, of Boston, Mass., for appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge. This is an intervening petition filed by the Commerce Trust Company, of Baltimore, Md., in the case of Haskell Manufacturing Co. v. Nelson Blower & Furnace Co. The petitioner seeks to have its rights established in the proceeds of the sale of the property of the Nelson Company, on which it claimed to hold a mortgage to secure a loan of $25,000, and on which it also claimed a lien with respect to other loans.

The case has already been before this court. 284 Fed. 737. The court there held the mortgage in question to be invalid, and remanded the case to the District Court for further proceedings not inconsistent with the opinion, but without limitation of the power of the District Court to hear and determine any issue raised in the original proceeding in the District Court and not determined by the opinion. The matter was thereupon heard anew in the District Court; that court finding various additional facts, ruling that the receivers were entitled to contest the validity of the mortgage, and making a decree that the mortgage was invalid. The case is now before this court upon appeal from that decree.

The principal question before us is: Was the District Court right in ruling that the receivers were entitled to contest the validity of the mortgage?

The District Court has, on August 18, 1923, found that the Nelson Company was insolvent on June 14, 1921, namely, at the time of the filing in the District Court of this petition.

The decree of the court declaring the mortgage invalid was based upon the finding that the corporation did not comply with the Business Corporation Law of Massachusetts (St. 1903, c. 437, § 40), which provides that:

"Every corporation may, at a meeting duly called for the purpose,  *  *  * by the vote of two-thirds of all its stock,  *  *  *  change its corporate name, the nature of its business, the classes of its capital stock subsequently to be issued and their voting power, or make any other lawful amendment or alteration in its agreement of association or articles of organization, or sell, lease or exchange all its property and assets, including its good will and its corporate franchise, upon such terms and conditions as it deems expedient."

We regret that the scope and application of the statute have not been passed upon by the Massachusetts court, and that a federal court is called upon to make an initial construction of the statute.

Whiting v. Malden & Melrose Railroad Co., 202 Mass. 298, 310, 88 N. E. 907, 132 Am. St. Rep. 493, was a case of merger of two corporations, acquiesced in for a long time by everybody interested, and the court held that noncompliance with statutory provisions made for the benefit of a corporation could not be set up against third persons, when those for whose protection they were intended had acquired advantages through action in disregard of them. The Massachusetts court gave no intimation of its views on the question before us.

The learned counsel for the trust company contends that the statute in question was intended to regulate the rights of stockholders, and was for the protection of stockholders only; that neither the corporation nor any one claiming under it may take advantage of a noncompliance with it; that only the minority stockholders have the right to assert the invalidity of the mortgage; that they could have waived such right and made the mortgage absolutely good; that, now the company is found by the court to be insolvent, neither stockholders, nor the corporation, nor receivers in an equity court can assert the invalidity of the mortgage; that, although such receivers are accountable to creditors and stockholders as potential distributees of the property, it is not true that they are clothed with all the rights enjoyed either by creditors or by stockholders as individuals. The trust company says it was ready, at the former hearing, to present the question of the right of receivers to assert the invalidity of the mortgage, and that it was not then permitted to present it. The record shows that this point was not passed upon at the former hearing, the court holding that the question was not competently before it. But it is now the intention of the court to give the trust company as full an opportunity to be heard upon this question as it would have had, if its contention had been presented at the former hearing.

The trust company cites Westerlund v. Black Bear Mining Co., 203 Fed. 599, 121 C. C. A. 627, as decisive of the issue. In that case the question was whether a bill by stockholders of a corporation to set aside a lease executed by the directors, without the consent of the stockholders, was a bill "founded on rights which may properly be asserted by the corporation," within the meaning of equity rule 94, now equity rule 27. A law of Colorado prohibited directors or trustees of a manufacturing company from incumbering a plant until the question

had been submitted at a legal meeting of the stockholders, and a majority of all the shares of stock had been voted in favor of the proposition. In speaking for the Circuit Court of Appeals for the Eighth Circuit, Judge Sanborn held that a contract of a corporation, within its corporate powers, and neither wrong in itself nor against public policy, but defective from a failure to observe in its execution the requirement of a law enacted for the protection of third parties, is voidable only, although the Legislature had said that such contract was "absolutely void." He held that the lease in question was capable of ratification by estoppel; that it was valid until avoided, not void until validated. In that case the rights of a corporation were at issue; no question was raised in regard to the rights of creditors nor of receivers. The case does not present a statute of the scope of this one now before us; it would not be decisive of the question now at issue, even if binding upon this court.

Other cases have been cited by the learned counsel for the trust company in which state courts have expressed the view that, under certain circumstances, only minority stockholders can assert the invalidity of a statute clearly for the benefit of stockholders only. Some of these cases involve the construction of statutes somewhat similar to that now before us, but not presenting the precise question. We do not find it helpful to discuss these cases severally. We find no case so closely parallel, in its facts, with the case at bar, as to be of great value to us in considering the statute at issue. Citations from textwriters are brought to our attention to the effect that directors and a majority of stockholders have the general right to mortgage corporate property. But the text-writers agree, so far as we have found, that without legislative authority, neither the directors nor a majority of the stockholders of a corporation have power to sell all of the corporate property and franchises of a corporation without the assent of all the stockholders. Such attempted sales by the directors and by a majority of the stockholders are said to be ultra vires and not merely voidable. Cook on Corporations (7th Ed.) § 670.

In the statute before us the Legislature was dealing with vital matters relating to the conduct and the life of corporations. We think it intended to prohibit a corporation, by its directors, or by less than two-thirds of its stock, at a lawful meeting, to change its corporate name, or the nature of its business, or the classes of its capital stock and their voting power, or to make any other lawful amendment or alteration in its agreement of association or articles of organization, or to sell, lease, or exchange all its property and assets, including its good will and its corporate franchise. We think the Legislature intended to place these fundamental changes in a corporation beyond the powers of directors and beyond the powers of stockholders representing less than two-thirds of its stock. The Legislature did not undertake to limit the protective powers of the statute, nor to say for whose protection it was made. We think it was clearly made for the benefit of stockholders; but we think it was not for their exclusive benefit. We think the Legislature intended to say that any person whose property rights were invaded by a noncompliance with the terms of this statute could assert the invalidity of any act attempted to be done with-

out such compliance. But, even though it should be held that those provisions were for the benefit of stockholders only, we think a provision for the benefit of stockholders is a provision for the benefit of the creditors of the corporation; that which is of benefit to the stockholders is primarily for the benefit of creditors. In case of insolvency, the property of the corporation must be applied to the debts of creditors before it can become available to the stockholders. It seems clear to us that, when the law-making power provided that a deed of a corporation must be executed by a vote of two-thirds of its stock in order to be valid, it sought to protect not only the stockholders of a corporation, but its creditors whose rights, in case of insolvency, are superior to those of stockholders.

We think it contrary to the principles of equity to hold that a stockholder for his own benefit may avail himself of a noncompliance with a statute, but when insolvency comes, and a court of equity intervenes, and receivers are appointed, charged with the duty of protecting the rights of creditors as well as other persons interested, that these receivers should not be able to assert a noncompliance with the statute. It seems to us against the principles of equity to hold that non-assenting stockholders could assert a noncompliance with the statute in the making of a conveyance, but that the lips of receivers are closed, even though those receivers represent, not only the rights of the stockholders, but the superior rights of creditors. In Re Post & Davis Co., 219 Fed. 171, 135 C. C. A. 69, a New York statute was brought before the court, providing that a mortgage, except for purchase money, must be consented to by the holders of not less than two-thirds of the corporate stock, which consent must be given at a special meeting of the stockholders called for the purpose upon the same notice as that required for the annual meetings of the corporation. Substantially the same question was raised under this statute as is brought before us in the case at bar. In speaking for the Circuit Court of Appeals for the Second Circuit, Judge Lacombe said:

"The language of the statute is most clear and specific; manifestly it was made so to accomplish some purpose. That purpose is very plainly indicated on the face of the statute. * * * To hold that written assent of two-thirds of the stockholders may be dispensed with in this case would go much further than any decision of the New York Court of Appeals to which we have been referred or which we have found. There is no pretense that any written assent was ever signed, or that it was ever voted at any stockholders' meeting, special or general. If the statute had been so construed by the state court of last resort, we should follow its construction of the state statute; but until such a decision is cited, we are unwilling to fritter away the specific provisions of an act which manifestly were put there to accomplish a plain purpose."

Judge Lacombe then discussed a former decision of the New York court in Black v. Ellis, 129 App. Div. 140, 113 N. Y. Supp. 558. In Constantine Tobacco Co. Case, 290 Fed. 128, 130, in speaking for the Court of Appeals of the Second Circuit, Judge Hough said that the remarks in the Post Case relating to Black v. Ellis must now, for certain reasons, be regarded as obiter; but the compact statement of the law by Judge Lacombe is not overruled or questioned; and Judge Hough expressly admits the right of the trustee in bankruptcy to use

the stockholders' right. And, if a trustee in bankruptcy can use the stockholders' right, of course receivers in equity can avail themselves of such right. In Re Progressive Wall Paper Corp., 230 Fed. 171, the District Court of the Northern District of New York bases its position upon Judge Lacombe's decree in the Post Case. The court says:

"As an original proposition under the section of the statute referred to, it would seem plain to this court that the requirement of the consent of the stockholders was not for the benefit or protection of the stockholders alone, but for the protection and benefit of the corporation itself and the benefit and protection of the creditors of the corporation."

The court then uses the same course of reasoning which we have adopted in dealing with the proposition that such clause in the Massachusetts statute was intended for the benefit of stockholders only. In our former opinion we have already referred to Commonwealth v. Smith, 10 Allen, 448, 87 Am. Dec. 672, in which it was held that a Massachusetts railroad corporation could mortgage its property only upon full compliance with the applicable statutory conditions. In speaking for the court, Mr. Justice Hoar said, in reference to the bonds and the mortgage which secured those bonds:

"To declare that they may be issued on certain fixed conditions is, in effect, to enact that they shall not be issued in any other manner."

While that decision relates to public corporations, the above reasoning applies as distinctly to a mortgage of a private corporation. And it may well be said that, if the statute provided that a sale could be made only on a vote of two-thirds of the stock of a corporation, it may fairly be held that the Legislature meant that such sale could not be made in any other manner, and hence that a sale made in any other manner would be invalid.

In Williams v. Gaylord, 186 U. S. 157, 22 Sup. Ct. 798, 46 L. Ed. 1102, the Supreme Court dealt with a case of the Supreme Court of California, construing a California statute to the effect that, without the consent of two-thirds of the shareholders, title to property does not pass, and holding that the question can be raised by any one who connects himself with the title of the corporation which owned the property.

The present controversy relates to the disposition of the fund produced by the sale of the mortgaged property. The petition of the trust company is directed against the receivers. The receivers are challenged to protect the interests of the trust property under their charge. If, while the corporation was solvent, the stockholders did not assert a noncompliance with the statute in the making of the mortgage in question, we think they have not prevented the creditors from asserting it, now that the corporation is insolvent and in the equity court. We think it is the right and duty of the receivers to assert it in behalf of the creditors; for the receivers have the responsibility over the trust property, first for the creditors, and then for the stockholders. If the stockholders have, in any way, parted with their rights, the creditors have not parted with their rights.

In Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357, the Supreme Court held that when a corporation is to be administered by an equity court,

equity takes charge of all the property and effects, and administers them as a trust fund, primarily for the benefit of creditors, and the remainder for the stockholders.

In Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004, the Supreme Court held that, in a case administered in an equity court, the capital stock and assets of the corporation constitute a trust fund for the benefit of its creditors, which neither the officers nor the stockholders can divert or waste. Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; Terry v. Anderson, 95 U. S. 628, 24 L. Ed. 365.

In Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 14 Sup. Ct. 127, 129 (37 L. Ed. 1113), in speaking for the Supreme Court, Judge Brewer said:

"When a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself. * * * Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first for the creditors, and then for the stockholders."

After a careful examination of the statute, and review of the record, we are of the opinion that Judge Bingham, sitting in the District Court, was right in ruling that the receivers are entitled to contest the validity of the petitioners' alleged mortgage, on the ground that it was invalid because it was not authorized in compliance with the statute of Massachusetts. St. 1903, c. 437.

It is unnecessary to pass upon any other matter raised by the assignments of error.

The decree of the District Court is affirmed; the appellees recover costs in this court.