CITY BANK FARMERS TRUST COMPANY, as Sole Surviving Trustee, Respondent, v. SECONSET CORPORATION, Appellant.

First Department, June 22, 1948.

*Granville Whittlesey, Jr.,* of counsel (*Douglas V. Lewis* with him on the brief; *Donovan Leisure Newton Lumbard & Irvine,* attorneys), for appellant

*Milton R. Friedman* of counsel (*Mitchell, Capron, Marsh, Angulo & Cooney,* attorneys), for respondent.

*Per Curiam.* We think Special Term correctly held that the lease was a graduated lease and was intended by the Legislature to be excluded from the " rent freeze " provisions of the emergency rent laws. The statutes creating the exemption do not distinguish between graduated leases which provide for a graduation in rent between the rent freeze date and the expiration of the lease, and those which do not so provide. The fact that the lease here involved does not provide for a graduation in rent between the rent freeze date and the expiration of the lease, although it does graduate the rent for other portions of the whole period of the lease, does not make it any the less a graduated lease. In *King Arthur Restaurant, Inc.,* v. *London Terrace, Inc.* (273 App. Div. 233, 236) this court recently said: " A lease must be read and considered as a whole and the statute applied accordingly. When the lease and the statute refer to rent, they encompass all the provisions for rent payable throughout the term of the lease."

Defendant lessee does not occupy any part of the rentable area of the building but sublets all of it to various under-tenants and, therefore, is merely in constructive possession of rentable space. While it is true that in *WMCA, Inc.,* v. *Blockfront Realty Corp* (272 App. Div. 800), the term of the lease had expired, nevertheless this court said that the emergency rent laws " were not enacted for the benefit of persons who are merely in constructive possession of rentable space in commercial buildings."

In *Adams* v. *Riker Operating Co.* (296 N. Y. 521) the order involved " was entered prior to the effective date of the 1946

amendment relating to leases providing for rent in a graduated scale " (*King Arthur Restaurant, Inc.,* v. *London Terrace, Inc.,* 273 App. Div. 233, 235, *supra*).

If there is any hardship, it is one the legislation has imposed; in any event the lessee has a remedy against its own tenants.

The order and judgment appealed from should be affirmed, with costs.

CALLAHAN, J. (dissenting). In this action for declaratory judgment commenced in May, 1946, the parties seek a declaration as to whether a certain lease comes within the application of the emergency rent laws (L. 1945, chs. 3 and 314, as amd.).

In 1929, the plaintiff's predecessor leased to the defendant a building known as 38 East 57th St., in the city of New York, for a term of twenty-one years beginning April 1, 1929, and ending March 31, 1950. The lease called for a net annual rental of $30,000 for the first seven years, $33,000 for the second seven years, and $36,000 for the last seven years of the term from April 1, 1943, to March 31, 1950. On April 1, 1942, the lease was modified by agreement for a period of two years by reduction of rent to $10,000 per annum, plus two thirds of the defendant's net annual income from its operation of the premises. This modification was later extended to March 31, 1946.

The defendant does not occupy any part of the rentable area of the building itself, but sublets the same to various undertenants. Some of these subtenants utilize their space for commercial purposes and others for business uses within the meaning of the emergency rent laws. The Commercial Rent Law (L. 1945, ch. 3) became effective January 24, 1945, and froze rents of premises occupied for commercial purposes at a maximum level of 15% over the rent charged on March 1, 1943. The Business Rent Law (L. 1945, ch. 314) became effective March 28, 1945, and fixed a like ceiling for premises occupied for business purposes at 15% over the rent payable on June 1, 1944. On both of the rental freeze dates aforesaid the agreement in modification of the lease involved in this case was in full force and effect.

The emergency rent statutes were amended after their enactment so as to provide that the provisions of any lease in force since on or before the rental freeze date and wherein the stipulated rental is in a graduated scale shall determine the rent payable during the term of such lease (L. 1946, ch. 272, § 14, and ch. 273, § 13, eff. March 30, 1946). Thereafter and subsequent to the institution of the present action the Legislature

further amended the statutory provisions relating to a lease on a graduated scale by adding the words " notwithstanding the subsequent modification of any of its terms " (L. 1947, chs. 822 and 823, eff. April 12, 1947). The effect of such amendments is to exclude a so-called graduated lease from the application of the emergency rent laws until the end of its term.

The principal question in this case is whether the lease aforesaid is a graduated lease within the purview of the emergency rent legislation. It will be noted that no graduation or change of rent is provided under the lease after April 1, 1943, when the reserved rental reached its maximum for the last seven years of the term.

The Special Term gave judgment on the pleadings in favor of the plaintiff and declared, in effect, that the present lease is a graduated lease under the emergency rent laws. The result of this holding is to restore the rent of $36,000 a year from the end of the second modification agreement, to wit, from April 1, 1946, to March 31, 1950. I cannot agree with this decision or with the construction of the law upon which it is based.

It was held in *Adams* v. *Riker Operating Co.* (296 N. Y. 521) that the emergency rent under a modified lease is the modified rent, plus 15% of such amount. This would make the emergency rent in this case $10,000 per annum, plus 15%, plus the percentage of the defendant's net annual income from the operation of the premises as provided in the modification agreement. This is the rental required of the defendant during the continuance of the emergency. If the plaintiff receives less than a reasonable return for its property on this basis, it has an appropriate remedy for obtaining an increase pursuant to the provisions of the emergency rent statutes. (See L. 1945, ch. 3, § 4, and ch. 314, § 4, as amd.)

The purpose of the statutory amendments excluding a graduated lease from the application of the emergency rent legislation was to leave in force and effect any lease in which the rent was not fixed at a single rate throughout the term and thereby avoid any unfairness that would otherwise result from taking the rental paid on one date rather than another for the purpose of determining the emergency rent. (See *King Arthur Restaurant, Inc.,* v. *London Terrace, Inc.,* 273 App. Div. 233.) This case, however, does not involve a situation of that kind.

The lease under consideration on this appeal provides for a rental of $36,000 per annum from April 1, 1943, to March 31, 1950, which, however, was modified as indicated until March 31, 1946. Under such circumstances there was only one sum upon

which an emergency rent could be computed. The absence of any graduation of rent during the operative period of the emergency rent laws renders inapplicable the statutory exception of graduated leases. The statutory amendments in regard to graduated leases speak prospectively as of the date of enactment and refer to any lease wherein the stipulated rental "is" in a graduated scale.

Unless the present lease is construed to be other than a graduated lease, the defendant will be compelled to pay a fixed rent of $36,000 per annum after March 31, 1946. As a consequence it would seem that those in actual possession as subtenants will be subjected to substantial increases in rent for the purpose of providing the wherewithal to enable the defendant to pay its rental of $36,000 per year. And this result would follow because of the existence of an intermediate lease held by the defendant. If this be not the effect of the emergency rent statutes, it would seem necessary to construe them so as to leave the defendant as lessee of the whole premises without the protection of the law, while extending its benefits to the subtenants of the defendant. Any such construction of the emergency rent legislation would seem to defeat the purposes of the law and should be avoided. It may be avoided by a statutory construction in accord with the apparent intent of the Legislature and a holding that the lease in this case is not a graduated lease in the absence of any graduation or change of rent after the effective dates of the emergency rent statutes.

The second question in this case is whether the emergency rent laws are inapplicable because the defendant does not itself occupy any part of the premises for commercial or business purposes. The present case is not like *WMCA, Inc.*, v. *Blockfront Realty Corp.* (272 App. Div. 800). In that case the assignee of a lease, the term of which had expired, was seeking to extend its right to possession under the emergency rent laws, though occupying no part of the premises for business purposes. Here the terms of the lease has not ended, but has several years to run. The defendant is not seeking to extend the term and cannot be freed from its lease prior to expiration on March 31, 1950. Under these circumstances the emergency rent laws should be applied to the defendant, though not in physical possession of the premises for its own commercial or business purposes.

Accordingly, I vote to reverse the order and judgment appealed from and direct judgment in favor of the defendant declaring that the emergency rent under the lease as modified is the sum of $10,000 per annum, plus 15% of such fixed amount,

plus an additional annual rent in an amount equal to 66⅔% of the net annual income derived by the defendant from the operation of the premises.

GLENNON, J. P., DORE, COHN and SHIENTAG, JJ., concur in *Per Curiam* opinion; CALLAHAN, J., dissents in opinion.

Order and judgment affirmed, with costs.