277 PARK AVENUE CORPORATION, Plaintiff, v. NEW YORK CENTRAL RAILROAD COMPANY et al., Defendants.

Supreme Court, Special Term, New York County, February 3, 1949.

*Isidor J. Kresel* and *George Brussel, Jr.,* for plaintiff.

*Frederick L. Wheeler, Jacob Aronson, Samuel H. Hellen-brand, Harold H. McLean* and *Leo Manville* for New York Central Railroad Company and another, defendants.

*Edward R. Brumley* and *Kenneth B. Morton* for New York, New Haven & Hartford Railroad Company, defendant.

*Daniel W. Blumenthal, amicus curiæ.*

ISIDOR WASSERVOGEL, Official Referee. This is an action brought by plaintiff to rescind a five-year lease, and, pursuant to article XV of the Real Property Law (§§ 500–512), to establish a prior leasehold interest in certain premises consisting of a parcel of land upon which, as ground lessee, it erected a twelve-story multiple apartment dwelling known as "277 Park Avenue". On March 1, 1923, defendants, New York Central Railroad Company and New York, New Haven & Hartford Railroad Company, as landlords, entered into a lease with plaintiff for a period of twenty years and seven months, said lease expiring September 30, 1943. The lease provided for two rights of renewal for periods of twenty-one years each, upon certain conditions set forth therein. The building involved was erected at a cost to plaintiff of approximately $6,500,000, of which $5,000,000 was obtained as the result of a bond issue.

Under the 1923 lease, the plaintiff was required to pay a fixed rental, plus 50% of all taxes on the land and 100% of taxes on the building and supporting structures. By agreement, dated February 6, 1925, defendants consented to various modifications of the fixed rental rates. The lease permitted plaintiff to execute two mortgages. On or about March 11, 1925, consent was given to plaintiff to execute a third mortgage, of which $400,000 was to be applied toward payments of amounts it owed for the construction of the building.

On or about December 16, 1931, plaintiff defaulted on its mortgage debts, and an involuntary petition in bankruptcy was filed against it, which resulted in an adjudication of bankruptcy on December 28, 1933. As of September 1, 1934, rental arrearages due defendants from plaintiff had accumulated to more than $200,000.

Subsequent to the filing of the involuntary bankruptcy petition, a protective committee of bondholders was organized which attempted to promulgate a plan of reorganization. Following negotiations commenced in 1933, by the bondholders' committee, the defendants entered into an agreement which provided, in the event of the reorganization of plaintiff corporation, that the

defendants would not declare plaintiff in default under the 1923 lease if it failed to pay in full the rentals which accrued thereunder during a period of five years. The agreement further provided that any deficiency would thereafter be payable with interest on or prior to the expiration of the lease on September 30, 1943, or, if the lease was then renewed, in semiannual installments of substantially equal amounts, which would be treated as additional rental during the first five years of the renewal term.

On September 19, 1935, plaintiff filed a petition for reorganization under section 77B of the Bankruptcy Act (U. S. Code [1934 ed.], tit. 11, § 207) in the United States District Court for the Southern District of New York. The petition was approved by Judge Knox of said court and the Irving Trust Company, which had previously acted as receiver in bankruptcy, was appointed trustee. The plan of reorganization, dated July 11, 1935, as amended October 1 and December 9, 1935, provided for the formation of a new corporation to which the assets of the debtor corporation would be transferred, and for the deposit of all the new common stock under a voting trust agreement, pursuant to which voting trust certificates would be issued. The proposed trust agreement, dated April 1, 1936, which was the contemplated date of consummation of the reorganization, was to continue for a period of ten years. On January 30, 1936, Judge Knox appointed Cornelius J. Smyth, Loren H. Rockwell, and Philip S. McNally as voting trustees. By an order dated March 31, 1936, Judge Knox approved the consummation of the plan of reorganization and directed the issuance of 38,795 shares of stock of the reorganized company to the voting trustees.

The plan of reorganization and the order of March 31, 1936, provided for a lease modification agreement, whereby defendants cancelled $150,000 rental arrearages due them by plaintiff. This agreement, though dated April 1, 1936, was formally executed on later dates by all the parties thereto. By further agreements, dated April 21, 1938, March 30, 1939, and May 29, 1940, defendants cancelled additional rental deficiencies which had accrued. In an agreement dated July 7, 1941, other deficiencies were permitted to be carried over. As of June 30, 1943, rental arrearages under the 1923 lease amounted to approximately $453,000.

Plaintiff's lease expired on September 30, 1943. Plaintiff contends that pursuant to the terms of the lease, it notified defendants of its intention to renew by a letter dated January

6, 1943. This letter was signed by Cornelius J. Smyth, as president of the corporation. It also contained a request by plaintiff for a modification of the rental terms. Plaintiff, through its officers, thereafter entered into negotiations with defendants, which culminated in the execution of a five-year lease in lieu of the requested twenty-one year renewal term. The five-year lease contained no provision for renewal at its expiration on September 30, 1948. This lease, dated December 23, 1943, was signed by Mr. Smyth on behalf of the plaintiff. It fixed the basic rental at $200,000 per year, plus an additional amount equal to 30% of gross earnings, not to exceed 50% of net earnings. Defendants also cancelled rental arrearages existing as of October 1, 1943, after applying thereto plaintiff's share of real estate tax refunds in certiorari proceedings then pending. They further agreed not to hold plaintiff in default during the entire term of the lease in the event it was unable to pay the full basic rental.

On October 1, 1948, defendants instituted a proceeding in the Municipal Court, Borough of Manhattan, Ninth District, based upon plaintiff's alleged unlawful holding over under the five-year lease. By order of Mr. Justice HOFSTADTER, this proceeding was removed from the Municipal Court and consolidated with plaintiff's action.

Plaintiff contends that the five-year lease was illegal and void because the consent of two thirds of its stockholders was not obtained in accordance with section 20 of the Stock Corporation Law. This contention cannot be sustained. The disposal of property contemplated by this statute, for which a stockholder's consent is necessary, is such a " sale and conveyance " of property and franchises as would result in the *closing* of the business for which the corporation had obtained its charter (*Matter of Timmis*, 200 N. Y. 177, 181; *Matter of Bacon* [*Susquehanna Silk Mills*], 287 N. Y. 1, 5; *Matter of Drosnes*, 187 App. Div. 425). The lease here involved was the result of plaintiff's efforts to *continue* its business by assuring itself of a tenure of five years without the possibility of default on its part for failure to meet increased rental obligations. No case which has come before our courts under section 20 of the Stock Corporation Law has applied its provisions to the conduct of a corporation attempting to remain in business. If a corporate management decides a business is unprofitable, it may cope with the situation by disposing of the property or business of the corporation, if, in its best judgment, this is deemed necessary to reduce or eliminate

further loss (*Skinner* v. *Smith,* 134 N. Y. 240; *Matter of National Surety Co.,* 239 App. Div. 490; *Raymond* v. *Security Trust & Ins. Co.,* 111 App. Div. 191).

Furthermore, section 10 of the voting trust agreement authorized the voting trustees, in their unrestricted discretion, to vote the stock as though they were its absolute owners. Advising the certificate holders of the proposed transaction, as required by section 11 of the voting trust agreement, was accomplished by the notice dated August 12, 1943. All other conditions and limitations set by the voting trust agreement were also complied with by the trustees. Since the required one third of the certificate holders did not dissent, the transaction may not now be attacked (*Matter of Bacon* [*Susquehanna Silk Mills*], 287 N. Y. 1, *supra*; *Strauss* v. *MidTown Enterprises, Inc.,* 60 N. Y. S. 2d 601).

It is plaintiff's position that the voting trust agreement was invalid, as the instrument was not formally executed until after the enactment of section 130-c of the Real Property Law, now commonly known as the "Streit Act". This statute limited voting trusts in real property reorganizations to a period of five years. The agreement was dated April 1, 1936; the effective date of the Streit Act was June 8, 1936 (L. 1936, ch. 900). No evidence was given upon the trial which definitely establishes the date the signatures were affixed to the original instrument, although it is conceded that copies of it were signed on August 20, 1936. The voting trust agreement was an integral part of the plan of reorganization, approved and confirmed by the United States District Court for the Southern District of New York. By order of Judge KNOX of said court, dated January 29, 1936, the plan was made binding on all stockholders and creditors of the corporation. The voting trustees were appointed by Judge KNOX five months before the enactment of the Streit Act. They immediately entered upon the performance of their duties. The form of voting trust agreement and the consummation of the plan of reorganization were approved by Judge KNOX by a further order dated March 31, 1936, more than two months in advance of the restriction placed on voting trust agreements by the Streit Act. The validity of the agreement was never questioned throughout its entire ten-year tenure. The signing of the voting trust agreement by the trustees was a mere ministerial act, and, whether its formal execution took place prior to or after the enactment of section 130-c of the Real Property Law, is entirely immaterial. The voting trust was effectively established and operating long before this legislative restriction on

the duration of voting trusts. Plaintiff, in effect, is collaterally attacking the bankruptcy orders. This court may not, however, revise or declare ineffective what the Federal court had directed to be done in carrying out the plan of reorganization (*Stoll* v. *Gottlieb*, 305 U. S. 165; *Chicot County District* v. *Bank*, 308 U. S. 371; *Metropolitan Playhouses, Inc.*, v. *Central Hanover Bank & Trust Co.*, 71 N. Y. S. 2d 88, affd., 272 App. Div. 1044; *Bakers Share Corp.* v. *London Terrace*, 130 F. 2d 157; *Matter of Flatbush Avenue-Nevins Street Corp.*, 133 F. 2d 760).

Plaintiff also attacks the validity of the voting trust agreement on the ground that it was not created in the manner provided by section 50 of the Stock Corporation Law. This section provides for the transfer to voting trustees, by an agreement in writing, of the stock and voting rights of a stockholder. Plaintiff's argument is based on the fact that the securities provided for in the reorganization proceedings were not first issued to the bondholders and then transferred individually by them by agreement in writing to the voting trustees appointed by the court.

The order of Judge KNOX of March 31, 1936, which approved the consummation of the plan of reorganization, directed the sole stockholder of plaintiff corporation, who held the securities in behalf of the bondholders' committee, to transfer all of the shares to the voting trustees. This was a direct transfer of the stock of plaintiff corporation to the voting trustees in compliance with section 50. The plan of reorganization, which had the force and effect of a contract, constituted the agreement in writing required by the statute, and was consented to by the sole stockholder of plaintiff corporation and the bondholders' committee, and approved by the Federal court. It would not be feasible in a situation such as was here presented, to require that the new stock be issued directly to widely-scattered security holders and then leave it to them to determine whether they would deposit it in a voting trust to which they had already given their consent. The method of issuing securities pursuant to a voting trust agreement provided for in a plan of reorganization is generally similar to the one adopted here (*Matter of Bacon* [*Susquehanna Silk Mills*], 287 N. Y. 1, *supra*; *Wolf* v. *Roosevelt*, 290 N. Y. 400; *Matter of Flatbush Avenue-Nevins Street Corp.*, 133 F. 2d 760, *supra*). The failure to record the transfer on the stock certificate or in the books of the corporation, as urged by plaintiff, is not a real issue in an action between a corporation and a third party. However, the stock ledger books do contain entries which reveal the transfer of securities by the sole stockholder to the trustees and the

issuance of new stock of plaintiff corporation pursuant to an order of the bankruptcy court.

*Matter of Morse* (*Bank of America*) (247 N. Y. 290) upon which plaintiff relies is clearly distinguishable from the facts here involved. The only question in that case was as to the effect of an amendment to section 50 of the Stock Corporation Law on existing valid voting trust agreements made by stockholders of *banking* corporations.

It is the policy of this State to give recognition to voting trusts created by a transfer of stock from the stockholders by their free and voluntary act. The transfer made herein by the sole stockholder to the voting trustees, pursuant to a plan of reorganization to which he had already consented, falls directly within the requirements of the aforementioned policy.

I hold that the voting trust agreement was valid in its inception for a period of ten years and that the Streit Act is not applicable (*Wolf* v. *Roosevelt*, 290 N. Y. 400, *supra*). I further hold that the voting trust agreement fully complied with the provisions of section 50 of the Stock Corporation Law.

There was no evidence presented upon the trial of this action which would warrant the conclusion that the plaintiff was induced to enter into the five-year lease by fraudulent, false, or misleading statements on the part of defendants. Defendants did not participate in, nor did they have knowledge of the contents of the notice of August 12, 1943, which plaintiff's president sent to the security holders and which plaintiff now contends contained false and misleading statements. The court finds that this notice actually gave a true and comprehensive picture of plaintiff's financial situation, and the negotiations entered into by it with defendants. Defendants' letter of June 23, 1943, in which they agreed " to again *examine* the situation during the fifth year of such five-year extension and will then determine whether we will extend the lease further " did not compel them to grant such an extension, nor did it create any obligation on their part to accept an offer which, in their judgment, was not in their best interests (*Central Sav. Bank in City of N. Y.* v. *Amted Realty Co.*, 274 App. Div. 392).

The record discloses default upon default in its obligations by plaintiff, forgiveness upon forgiveness by defendants. Every possible consideration was shown to plaintiff by defendants. There is absolutely no basis for the charge of fraud made by plaintiff and not one vestige of fraud has been established. The equities in the case are with defendants.

It is not disputed that plaintiff had a right of renewal under the 1923 lease. The terms of said lease, however, expressly provided for the execution of a new lease in addition to a notice of renewal. After prolonged negotiations, and after a notice purporting to renew the lease had been submitted to defendants, the only instrument executed was the five-year lease. The consent of the directors of the plaintiff corporation, who were also the voting trustees, was obtained for the execution of said agreement. Any doubt as to the authority of the corporate management to make the five-year lease was completely dispelled by the notice of August 12, 1943, in which the certificate holders were informed of the situation and their approval or dissent to the proposed agreement requested. A very small minority of the shareholders objected to the proposed lease. Accordingly, whatever the nature of the transaction involved, it was authorized and approved by the certificate holders.

On September 14, 1948, just sixteen days prior to the expiration of the five-year lease, plaintiff sent a letter to defendants purporting to rescind such lease. It also tendered to defendants the sum of approximately $132,000, representing the alleged monetary benefits which plaintiff had derived under this lease. It is a fundamental principal of equity that a party who seeks equitable relief should be required as a condition therefor to do equity to the other party. One who asks rescission is required to place the other party *in statu quo*. I hold that the tender of money by plaintiff to defendants is not sufficient to restore them to their legal position and to their legal rights as of 1943.

The five-year lease provided for the surrender of the premises by plaintiff at the expiration of its term on September 30, 1948. This, plaintiff failed to do. As heretofore stated, defendants thereupon instituted dispossess proceedings which were consolidated with plaintiff's action.

Plaintiff occupies a relatively small space in the premises, which is used solely in the operation of the building. In addition to this, plaintiff contends it is in possession of the elevators, hallways and garden court, which actually are used in common by all tenants of the premises. A tenancy such as plaintiff's was not intended to come within the protection of the rent control laws. The factual situation in the case before the court is entirely different from that in *214 West 39th St. Corp* v. *Miss France Coats, Inc.* (274 App. Div. 597), cited by both parties as authority for positions taken by them respectively. Unlike plaintiff, the tenant in the cited case occupied space for manu-

facturing purposes, which had no relation to the operation of the remainder of the premises, and, unlike plaintiff, the tenant in the cited case, after subletting a portion of his space, retained a *substantial* part thereof for its own use. The emergency rent laws were not enacted for the benefit of persons such as plaintiff who are merely in constructive possession of rental space in a building (*WMCA, Inc.,* v. *Blockfront Realty Corp.,* 272 App. Div. 800, leave to appeal denied, 297 N. Y. 1042; see, also, opinion of Mr. Justice WALTER in this case at Special Term, 67 N. Y. S. 2d 867; *City Bank Farmers Trust Co.* v. *Seconset Corp.,* 274 App. Div. 112, affd. 298 N. Y. 643).

Plaintiff's motion to dismiss the dispossess proceeding is denied. Defendants are entitled to a final order therein. In the main action, judgment is rendered for defendants dismissing the complaint upon the merits. One bill of costs is allowed to all defendants.

The foregoing constitutes the facts found by me and is the decision of the court as required by section 440 of the Civil Practice Act.

Submit decree and order for the dispossess of plaintiff within ten days on three days' notice.