## SCHREIBER v. BUTTE COPPER & ZINC CO. et al. (two cases).

United States District Court,
S. D. New York.

June 6, 1951.

Pomerantz, Levy, Schreiber & Haudek, New York City, for plaintiff. Abraham L. Pomerantz, New York City, of counsel.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, for defendant Anaconda Copper Mining Co. Leonard P. Moore, Alan S. Kuller, New York City, of counsel.

Garey & Garey, New York City, for defendant Butte Copper & Zinc Co. Eugene L. Garey, John P. Boland, New York City, of counsel.

WEINFELD, District Judge.

There are three separate motions before the Court in two actions brought by the plaintiff, a stockholder of Butte Copper & Zinc Co., hereinafter referred to as Butte, against Butte and against Anaconda Copper Mining Co., hereinafter referred to as Anaconda.

One action is admittedly a derivative suit on behalf of Butte, wherein judgment is sought requiring the co-defendant Anaconda to account to Butte for profits derived by Anaconda by reason of its continued operation of Butte's mines and properties after June 24, 1950.

The other action, asserted by plaintiff to be a representative one, seeks an injunction restraining Butte from carrying out a "purported lease of Butte's properties and mines to Anaconda and from causing or permitting the operation of Butte's mines and properties by Anaconda." Defendants claim that this action too is derivative. For purposes of convenience, the conceded derivative action shall be referred to as such and the disputed one as the injunction suit.

Both complaints, verified the same day, allege in haec verba the same facts. They differ in that the injunction suit, except for the nature of the relief requested, also contains allegations of irreparable damage.

The motions are as follows:

In the Derivative Action.

(1) By the defendant Butte for an order directing plaintiff to furnish security under the New York General Corporation Law, Section 61–b, McK.Consol.Laws, c. 23.[1]

In the Injunction Action.

(2) By the plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment, or in the alternative, for an order pursuant to Rule 56(d); and

(3) By the defendants for an order dismissing the complaint, or in the alternative, requiring the plaintiff to furnish security for expenses pursuant to Section 61–b of the New York General Corporation Law.

Since 1904 Butte has been the owner of mines and mine properties in Montana. Its operations in the early years were not par-

1. "In any action instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than five per centum of the outstanding shares of any class of such corporation's stock or voting trust certificates, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorneys' fees, which may be incurred by it in connection with such action * * *."

ticularly successful and eventually it was compelled to suspend operations for lack of capital. In 1915 Butte and Anaconda entered into an agreement whereby Anaconda installed certain equipment and machinery, placed the mines in sound condition and operated them for a time, for which Anaconda received 11.6% of Butte's stock and one-half of the profits. Thereafter, in July 1917, an agreement was made for the operation of all of Butte's mines by Anaconda, the net earnings to be divided equally between the two companies. In substance, this arrangement between Anaconda and Butte continued uninterruptedly for thirty-six years, from 1917 to June 24, 1950, under four separate agreements for different terms, the last of which was entered into on June 24, 1940 for a ten-year period. Butte is a Maine corporation. Each of these agreements was approved by the stockholders of Butte pursuant to Section 80 subd. I of the Maine Corporation Law, R.S.1944, c. 49.[2]

On June 12, 1950, a letter agreement was signed by the executive officers of Butte and Anaconda, whereby the existing agreement terminating on June 24, 1950, was continued in effect from that date until either party (a) exercised a right of cancellation (incidentally, a right not contained in any prior agreement) or (b) delivered a definitive agreement for a new term, whichever shall first occur. The nature of this arrangement is in sharp dispute and is the central point of the controversy. Plaintiff grounds his complaints thereon, charging that it violates the Maine Corporation Law in that the consent of Butte stockholders was not obtained. The defendant Butte disputes that such approval was required because (1) it is not a lease, and (2) assuming, arguendo, that it is, it

was made in the ordinary and usual course of Butte's business.

The defendant Butte argues that the letter agreement was a stop-gap arrangement to protect Butte's interest and to avoid interruption of the mines' operations which had proved profitable to Butte through the years. The expedient was adopted because of negotiations then pending between Butte and the Internal Revenue Bureau of the Treasury Department as to the depletion allowances claimed by Butte under the Internal Revenue Code, 26 U.S.C.A., the determination of which was dependent upon the nature of the existing and prior agreements between Butte and Anaconda. The Government contended they were leases whereas Butte urged they were agreements for the joint operation of the mines on a 50–50 basis. Butte's officers in their considered judgment and acting upon the advice of counsel decided against entering into a renewal agreement until a ruling was made as to the tax consequences of the agreements under which the two defendants had operated for so long a period. Instead, it was decided to continue operations pursuant to the letter agreement of June 12, 1950, which defendants designate as an interim arrangement, leaving for subsequent action the terms of a definitive agreement.

Butte points to a favorable Treasury Department ruling some six or seven months thereafter, in February 1951. It states that with the tax situation thus clarified it has since carried on negotiations with Anaconda for a new lease and when the terms have been concluded it will be submitted, as in previous years, to stockholders for approval, although it insists such approval is not required.

2. "No corporation shall sell, lease, consolidate, or in any manner part with its franchises, or its entire property, or any of its property, corporate rights, or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of its business, except with the consent of its stockholders at an annual or special meeting, the call for which shall give notice of the proposed sale, lease, or consolidation. All such sales, leases, and consolidations, except as in this section hereinafter otherwise provided, shall be subject to the provisions of this and the 11 following sections, and to the prior lien of stockholders as therein defined. Except as to franchises, this and the 11 following sections shall not be held to apply to mortgages of corporate property."

### Defendant Butte's Motion for Security in the Derivative Action.

The plaintiff is a New York citizen, owning 25 shares of Butte out of a total of 600,000, amounting to .004% of the total, valued at $206.25.

Butte is a Maine corporation and Anaconda a Montana corporation. Jurisdiction is based upon diversity of citizenship. The motion for security for reasonable expenses and counsel fees is made under Section 61–b of the New York General Corporation Law which is applicable. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528.

In support of its motion, Butte states that the present action may endanger rather than advance its interests and those of its stockholders and under the circumstances it must vigorously defend the action. It contends, and the facts support its position, that it is not a nominal defendant in this derivative action as is the case where officers and directors are charged with breach of trust and over-reaching the corporation.

Plaintiff concedes, as he must, that in this action defendant Butte is entitled to security but requests that the motion be denied at this time with leave to renew. He offers to defer this derivative action and extend the time of the defendants to answer without date pending a prior trial and determination of the injunction suit, wherein he says no security may be required because it is a representative suit, which will necessarily be dispositive of both as the validity of the agreement is basic in each. As was to be expected, the offer has not been accepted. Litigation having been forced upon it, Butte is entitled to security and not offers of stipulations. Plaintiff has attacked and the defendant is entitled to resist and defend. In effect, plaintiff offers a truce to avoid posting security in this action while he insists on a right to continue his attack by other litigation which he deems more suited to his purpose.

Butte contends that adequate defense preparations require a detailed analysis and survey of the mines, their productive capacity, capital investment for neces-sary equipment (additional to that which Butte would acquire from Anaconda upon termination of the existing arrangement) to operate the mines independently, ability of Butte economically and efficiently to effect the transition, and other related items. The Court is not required at this time to pass upon the relevance of this testimony upon a trial but sufficient appears to indicate that the preparation of the defense will entail substantial cost and expense. Defendant requests $60,000 as representing the fair and reasonable cost of its defense, including attorneys' fees. After reviewing all the affidavits on this subject the Court is of the opinion that adequate security at this time is the sum of $40,000, which plaintiff is directed to furnish.

The order to be entered hereon may contain an appropriate provision permitting plaintiff to move to vacate the order within a reasonable period upon meeting the requirement as to the percentage of stockholders or value of stock under Section 61–b of the New York General Corporation Law. In the Matter of Baker v. Macfadden Publications, 300 N.Y. 325, 90 N.E.2d 876.

### Motion by Plaintiff for Summary Judgment (Injunction Action).

Here the plaintiff moves for summary judgment, contending that there is no issue of fact—only narrow questions of law. The Court cannot agree. There is a sharp dispute—in fact, it is the hard core of the controversy—as to the nature of the letter agreement of June 12, 1950. Plaintiff contends it is a lease—an extension for an indefinite period of a prior one. Defendant Butte asserts it is not a lease but a stop-gap or an interim arrangement pending a definitive agreement.

Whether the letter agreement, or by whatever name called, was in fact a lease requiring stockholders' consent or of such a nature as to be within the scope of permissible activities of Butte's officers endeavoring to protect its corporate interests, is a question of fact, perhaps a mixed question of law and fact. It involves the construction of specific language in a specific statute and application of that language, so

construed, to a group of evidential facts. Yoshi Ogino v. Black, 278 App.Div. 146, 104 N.Y.S.2d 82. The attendant circumstances upon the signing of the letter, the intent of the parties and the nature of the relationship based upon prior dealings may be relevant in determining this issue.

Another question of fact, assuming, arguendo, that the letter constitutes a lease, is the contention that in the light of the historical method of the operation of the mines, it was made in the ordinary and usual course of Butte's business and so was within an exception under the Maine Corporation Law. This the plaintiff challenges, saying that Butte's ordinary business was mining and not acting as landlord of mining properties. Detailed discussion of the various cases cited by the litigants would serve no purpose as each depends upon its own peculiar facts. The legislation which requires consent of stockholders in the case of sale or lease of assets, substantially the same in most states, was "not addressed to the ordinary sales by a corporation, nor even to those extraordinary in size, but still in the regular line of its business, * * *." Matter of Timmis, 200 N.Y. 177, 181–182, 93 N.E. 522, 524. The test applied by the Courts is not the amount involved but the nature of the transaction. Matter of Miglietta (2660 Broadway Corp.), 287 N.Y. 246, 39 N.E.2d 224; 277 Park Ave. Corp. v. New York Central R. Co., 194 Misc. 417, 90 N.Y.S.2d 214, affirmed 275 App.Div. 1028, 91 N.Y.S.2d 838. What in the instance of one corporation may be a sale or lease of all its assets requiring consent of stockholders, may, in the case of another corporation, depending upon its purposes, methods of operation and past history, and the industry practices and pattern, represent usual, normal and ordinary activity which does not require consent. Each case must be determined upon its own facts. The issues in dispute do not permit a "trial by affidavits". Arnstein v. Porter, 2 Cir., 154 F. 2d 464.

The motion is denied in all respects.

Motion by Butte to Dismiss the Complaint, or Alternatively, for an Order Requiring Plaintiff to Give Security Under

### Section 61–b of the New York General Corporation Law (Injunction Action)

In this complaint plaintiff alleges that the letter agreement is an extension and renewal of the lease which expired on June 24, 1950, and because of lack of stockholders' consent violated the Maine Corporation Law. As already noted, it differs from the complaint in the derivative action only in the claim of irreparable injury and the demand for relief which seeks to enjoin both defendants from carrying out the purported lease of Butte's mines and properties to Anaconda and from permitting their operation by the latter.

Upon the argument of the motion plaintiff conceded that this injunction suit was brought to avoid the effects of Section 61–b of the New York General Corporation Law. His motives in bringing both actions are attacked. However, the fractional percentage of outstanding shares owned by the plaintiff or his purpose in bringing this action may not be inquired into on this motion if the complaint is legally sufficient and his right to assert the claim exists.

The motion to dismiss the complaint is predicated, in part at least, upon the ground that the agreement is not a lease within Section 80 of the Maine Corporation Law but an operating agreement. Collateral argument is also made here that even if it is a lease it comes within the statutory exception because it was made "in the ordinary and usual course" of Butte's business. As has been pointed out in the denial of plaintiff's motion for summary judgment, these are questions of fact to be determined upon a trial—a fortiori, the defendants cannot prevail on this aspect of the motion to dismiss the complaint where the allegations are deemed to be true.

Dismissal of the complaint is also sought in that it fails to allege any matters which in law constitute irreparable injury and further that plaintiff lacks capacity to sue. If the complaint is found sufficient defendant Butte contends the action is derivative and it is entitled to security in this action, too, under the New York General Corporation Law.

■ First, as to the claim that the complaint fails to allege matters which in law constitute irreparable damage to the plaintiff. Plaintiff alleges it will be impracticable for him and other stockholders of Butte to maintain a derivative action because of the security requirement of Section 61–b of the New York General Corporation Law. The short answer to this contention is the law itself. To sustain plaintiff's position would provide a most convenient means of circumventing that law and defeating its purposes. Likewise, the other asserted grounds of irreparable damage do not require extended consideration, since the right of a stockholder to maintain a suit attacking the validity of a sale or lease of all the corporate property for failure to comply with a statutory requirement of stockholders' consent, cannot be doubted. Westerlund v. Black Bear Mining Co., 8 Cir., 203 F. 599, the facts of which bear a striking resemblance to those at bar, held:

"That this lease diminished the value of the land of the corporation is not debatable. It took from the corporation the right of possession and occupation of the property for five years and thereby deprived it of a possession and occupation it would otherwise have had. It took from the corporation the right to produce ore from the property for five years, and, forever, if the lessee extracted all the ore during the term. * * *

"And the conclusion is that this mining lease constituted an incumbrance upon the property of the corporation and that it was voidable at the suit of its stockholders because, as against them, its execution without their approving vote was beyond the powers of the board of directors and of the corporation." Page 610 of 203 F.

"* * * The corporation has no right to eject the lessee on the ground that the stockholders did not assent to the lease, and, although the corporation may maintain such an action on other grounds, the stockholders still have their right to relief in equity on this ground." Page 618 of 203 F.

There next remains the question of plaintiff's capacity to sue and the nature of the action which as posed by defendant on its motion to dismiss are somewhat intertwined. Is the action representative or is it derivative? All parties seem to be in disagreement as to the test to be applied in determining this issue, with the defendants taking somewhat inconsistent positions. Anaconda, which joins in Butte's motion to dismiss, urges that Sections 80–91 of the Maine Corporation Law are designed solely for the protection of stockholders and a corporation may not rely on them as a defense to an action against it. It argues, "The provisions give no right of action to the corporation itself so that Butte could not bring an action against Anaconda to cancel an agreement on the ground it violates Section 80" and concludes that plaintiff "can hardly have any greater right in a representative suit against Anaconda than his own corporation could assert." [3]

On the other hand, Butte takes the opposite point of view, contending that "[T]he complaint is defective because * * * it seeks to enforce a primary right belonging not to the plaintiff (but to the corporate defendant) by means of a representative action rather than a derivative action." [4]

■ An action may be said to be representative when it is based upon a primary or personal right belonging to the plaintiff-stockholder and those of his class. It is derivative when the action is based upon a primary right of the corporation but which is asserted on its behalf by the stockholder because of the corporation's failure, deliberate or otherwise, to act upon the primary right. "The cause of action which such a plaintiff brings before the court is not his own but the corporation's. It is the real party in interest and he is allowed to act in protection of its interest somewhat as a 'next friend' might do for an individual, because it is disabled from protecting itself." Koster v. (American) Lumbermens Mutual Casualty Co., 330 U. S. 518, 522, 67 S.Ct. 828, 831, 91 L.Ed. 1067. Thus, we must determine whether the right

3. Anaconda brief, p. 22.

4. Butte brief, pp 3, 13.

of action exists in the plaintiff—as a primary right—or whether it is derived from the corporation or secondarily because of its failure to act. Security may be required under the New York law only where the action is " * * * instituted or maintained in the right of any foreign or domestic corporation * * *."

■ The Courts have been in general agreement that non-consenting stockholders have the right to maintain an action to invalidate a lease or conveyance made or about to be made by a corporation within its general powers but without the required consent of shareholders. They were not in accord, however, as to whether or not the right to maintain the action was exclusive with the stockholders. Representative of these is Westerlund v. Black Bear Mining Co., supra, which held that only the stockholders may attack.

"But a corporation which has executed and accepted the benefits of a contract within the scope of its powers, that is neither wrong in itself nor against public policy, and that is defective only because in its execution the corporation has failed to comply with some legal requirement enacted for the sole benefit of third persons, is estopped to assail it, and the beneficiaries of the requirement alone may avoid it. Hence the stockholders of this corporation, and they alone, have the right to avoid this lease because they alone had any interest in a compliance with the legal requirement that they should assent to its execution. * * *" 203 F. at page 613.

*  *  *  *  *  *

"An act or contract of a corporation otherwise within its powers and valid, but defective on account of the failure of the corporation to comply with some requirement of statute or of law enacted for the sole benefit or protection of third parties, is assailable by the beneficiaries alone. It may not be successfully attacked by the corporation. * * *" 203 F. at page 617.

To the same effect: Dold Packing Co. v. Doermann, 8 Cir., 293 F. 315; Galbraith v. First National Bank, 8 Cir., 221 F. 386.

Other Courts had not so limited the right to maintain the action and held that it also extended to the corporation, its receiver or trustee and even to creditors. Commerce Trust Co. of Baltimore, Md. v. Chandler, 1 Cir., 295 F. 241; McDonald v. First National Bank of Attleboro, 1 Cir., 70 F.2d 69. Such was the prevailing view in this Circuit. In re Post & Davis, 2 Cir., 219 F. 171; In re Progressive Wall Paper Corp., D.C.N.D.N.Y., 230 F. 171.

But in Royal Indemnity Co. v. American Bond & Mortgage Co., 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100, the conflict was finally resolved. Creditors relying upon the very Maine statute involved in this case, sought to vacate an adjudication of insolvency of a corporation based upon a petition filed and authorized by the directors but without the consent of the stockholders. The creditors contended that the filing of the petition without such consent was a conveyance of all the corporate property contrary to the statutory prohibition. The Supreme Court rejected that argument, holding that the law did not apply to the initiation of a bankruptcy proceeding. But it did not rest its decision on that ground alone. It held, "But there is another equally persuasive. Statutes such as the one relied on are intended for the protection of stockholders and have nothing to do with the interests or rights of creditors. * * * Creditors have no standing to plead statutory requirements not intended for their protection." 298 U.S. at page 171, 53 S.Ct. at page 554, 77 L.Ed. 1100.

The impact of the ruling is seen in Greene v. Reconstruction Finance Corp., 1 Cir., 100 F.2d 34, 36 where the Court of Appeals, referring to its prior rulings in Commerce Trust Co. v. Chandler, supra, and McDonald v. First National Bank of Attleboro, supra, was forced "to the conclusion that these holdings were erroneous" and held that a trustee "as the representative of the corporation as well as of the creditors, cannot question the validity of the mortgages." In so reversing itself the Court accepted the authority of Westerlund v. Black Bear Mining Co., supra, and the cases cited therein that "the stockholders alone had the right, and that the corporation was without right, to maintain a suit to avoid this lease on the ground that

it was made without the approving vote of its stockholders." 203 F. at page 615.

Thus it appears that only the stockholders of Butte, and not the corporation, have the right and the capacity to maintain this action to invalidate the alleged lease to Anaconda. The right is primary and personal to the stockholders and is not derived from the corporation. The complaint states a cause of action to which Section 61–b of the New York General Corporation Law does not apply.

The motion to dismiss the complaint, or in the alternative for security, is denied.

Settle orders on notice.