In the Matter of MARIA G. MIGLIETTA et al., Appellants. TWENTY-SIX SIXTY BROADWAY CORPORATION, Respondent.

Argued November 24, 1941; decided January 15, 1942.

*William F. Walsh* and *Robert L. Levine* for appellants. The principal asset of the corporation having been sold, a non-consenting stockholder may demand that his stock be appraised and paid for. (*Matter of Timmis,* 200 N. Y. 177; *Matter of Bickerton,* 196 App. Div. 231; 232 N. Y. 1; *Matter of Borea,* 234 App. Div. 450; *Matter of Drosnes,* 187 App. Div. 425; *Matter of Erlanger,* 206 App. Div. 148; *Matter of Clark,* 131 Misc. Rep. 151; *Kaszubowski* v. *Buffalo Telegram Corp.,* 131 Misc. Rep. 563; *Matter of Fulton,* 257 N. Y. 487; *People* v. *Ballard,* 134 N. Y. 269; *Matter of Silberkraus,*

250 N. Y. 242; *Matter of Seiler,* 239 App. Div. 400; *Murrin* v. *Archibald Consolidated Coal Co.,* 196 App. Div. 107; 232 N. Y. 541.) A corporation organized under article 2 of the Stock Corporation Law (Cons. Laws, ch. 59) pursuant to section 21 of the Personal Property Law (Cons. Laws, ch. 41) and section 111 of the Decedent Estate Law (Cons. Laws, ch. 13) is a business corporation and a non-consenting stockholder is entitled to the remedies provided in sections 20 and 21 of the Stock Corporation Law. (*Mertz* v. *Guarantee Trust Co.,* 247 N. Y. 137; *Matter of Timmis,* 200 N. Y. 177; *Matter of Bickerton,* 196 App. Div. 231; 232 N. Y. 1.)

*M'Cready Sykes, George L. Shearer* and *John Henry Mottola* for respondent. Appraisal of and payment for his stock and the stockholder's withdrawal from the salvage enterprise would defeat the policy of the mortgage salvage corporation statute. (*Matter of Chapal,* 269 N. Y. 464; *Matter of Otis,* 276 N. Y. 101.) The statutory provision that stockholders of salvage corporations shall have power to authorize sales confers no preferential right to appraisal of and payment for the stock of any one of them. (Cons. Laws, ch. 13, § 111; Cons. Laws, ch. 41, § 21; *Matter of Otis,* 276 N. Y. 101.) The provision for appraisal, payment for stock and withdrawal is inapplicable to sales made by a corporation in the regular course of business and in furtherance of its normal corporate purposes. (*Surace* v. *Danna,* 248 N. Y. 18; *Matter of Timmis,* 200 N. Y. 177; *Matter of O'Hara,* 133 Misc. Rep. 184; *Matter of Bickerton* v. *New York Theatre Co.,* 232 N. Y. 1; *Wattley* v. *Nat. Drug Stores Corp.,* 122 Misc. Rep. 533; 209 App. Div. 872; *Keating* v. *Coleman,* 214 App. Div. 668; *Matter of Knaisch,* 203 App. Div. 725.)

FINCH, J. May a share owner in a salvage corporation demand appraisal of and payment for his stock when the salvage corporation sells the property acquired at the foreclosure sale and takes back a purchase-money mortgage?

Prior to 1937 the United States Trust Company was

mortgagee of a $560,000 mortgage on premises 2660–2668 Broadway, New York city, in which 56 shares at $10,000 each had been sold to various interests. Upon foreclosure of the mortgage the United States Trust Company bid in the property and, with the consent of all 56 share owners, formed the defendant salvage corporation. Each of the stockholders received a share of stock representing his $10,000 investment in each certificate. The appellant Miglietta thus became a voluntary stockholder of the salvage corporation, receiving two shares of stock. Subsequently Walsh and Levine acquired one of such two shares from Miglietta. The corporation is known as a salvage corporation authorized by section 21 of the Personal Property Law (Cons. Laws, ch. 41) and section 111 of the Decedent Estate Law (Cons. Laws, ch. 13) for the purpose of liquidating property acquired by a fiduciary on the sale of mortgaged property where the mortgage had been divided into shares or participations held in different trusts or, as the trusts were terminated, by individuals. The purpose and powers of the corporation are stated in its certificate to be to acquire, manage, sell, mortgage or lease the real property in question, with power to invest the surplus, and to be dissolved upon final liquidation of the entire interest in such real property. Acquired in 1937, a sale of the property was negotiated in 1940, at the price of $500,000, being $25,000 in cash and $475,000 in a purchase-money bond and mortgage, the purchaser to make certain amortization payments and alterations and improvements at an estimated cost of $50,000. The contract of purchase was conditioned on procuring the consent of the stockholders. A meeting of stockholders was duly called, at which the contract of sale was approved by an affirmative vote of holders of 49.92666 out of the total 56 shares outstanding, no vote being cast in opposition. The appellants as holders of the two shares did not vote at all but subsequently protested against the proposed sale and demanded payment for their stock. The sole question on this appeal is whether appellants as a matter of law are entitled to

payment for their stock at a value to be fixed by appraisers. Special Term denied the application of appellants for the appointment of appraisers. The Appellate Division unanimously affirmed.

The present corporation is a salvage corporation. Its assets are confined to the mortgaged property on foreclosure and its eventual liquidation and distribution among the owners in exact proportion to their interests. That was the only regular, ordinary business of the corporation. It had none other. It was formed to hold title to the single parcel of real estate acquired on foreclosure with the object of liquidating the same and salvaging to whatever extent was possible the original mortgage investment and thereupon to be dissolved. Obviously, unless a statute compels a different result, equality among the shareholders would be equity. The preservation of equality as among the certificate holders, a single management with the power of sale and liquidation, and *pro rata* distribution of proceeds are inherent and essential features of any salvage operation. Equality of distribution according to the respective shares in a salvage operation conducted for the benefit of associates forced together in a common enterprise of recovery must be the very heart of a salvage corporation authorized by legislative policy. Against this the appellants direct their present claim. They seek to invoke the statute (Stock Corp. Law, §§ 20 and 21 [Cons. Laws, ch. 59], providing that stockholders objecting to the sale of corporate assets whereby the purpose of the corporation is altered, may withdraw from the enterprise and demand that the corporation shall buy them out, paying such sum as shall be found on appraisal to represent the value of their shares in the corporate enterprise. Such claim, if successful, must of necessity give to these appellants a priority over all other shareowners. The salvage company has no assets other than the proceeds of the sale which it has made of its entire property, namely, $25,000 in cash, slightly more than adequate to cover sales cost, such as broker's commissions, and a purchase-money mortgage of $475,000, with interest and amortization clauses, and the agreement of the purchaser to

make improvements at an estimated cost of $50,000. These make up the entire assets of the corporation. If successful the appellants would manifestly destroy the equal distribution otherwise provided for the shareholders. The order of the court, to be effective, must be enforceable by forced sale of the corporate assets. There appears nothing else from which to pay the claim of the creditor. The dissenting appellants would thus not only have obtained the position of a preferred creditor, but presumably all the assets would have to be sold for the mortgage is indivisible. Enforced sale would, therefore, not only give the appellants priority, but would take away from the other stockholders the value which might be attained through orderly liquidation of the mortgage. Indeed, the appellants recognize this preference to themselves and hardship to the other stockholders, and seek to answer by serving upon the respondent a notice to produce upon the hearing of this appeal various financial statements so as to show to the court the cash position of this respondent. Appellants suggest that at the time of sale the salvage corporation received $25,000 in cash, of which $8,500 was paid for brokerage and that after payment of fees and other incidental expenditures there would still be left over $12,000 in cash. They then suggest that the corporation should have received in the meantime certain interest and amortization payments. As the property sold for $500,000, which was $60,000 less than the mortgage, the appellants state that they would be entitled to receive between them a sum of less than $18,000. They assume that the corporation would have that much in cash and hence it would not be necessary to sell the mortgage at auction.

The appellants further urge in their brief that they will be willing to stipulate " in order to make certain that the respondent will not be damaged, and in order to make further certain that the mortgage held by it will not have to be auctioned off   *   *   *   that the valuation of appellants' stock   *   *   *   will be collectible only by the appellants from moneys which the respondent has on hand (provided

it does not declare and pay a dividend to the stockholders in the meantime); or, if there is not sufficient moneys on hand to pay the appellants in full, then any balances remaining unpaid can only be collected by the appellants from respondent out of the interest and amortization payments made by the mortgagee." Thus do appellants seek to prevent any payment of dividends out of interest and amortization payments to the other shareholders until they themselves shall have received immediate payment of their shares in full, thereby eliminating as to their interest any possibility that the purchaser may default in his interest and amortization payments, and compel a second foreclosure. No better illustration of the inequity of the demand of appellants can be found than their own suggestion. It thus becomes necessary to examine in detail the statutes invoked by the appellants as the basis of their application.

The statute authorizing the formation of salvage corporations appears in identical terms in the Personal Property Law (§ 21, subds. 3 and 4) and in Decedent Estate Law (§ 111). Subdivision 4 of section 21 of the Personal Property Law provides: " The corporation organized for the acquisition of such property shall be a business corporation, and shall have all the powers of such a corporation, and its stockholders shall have the same power to vote to authorize or confirm any sale, mortgage, lease, option or other disposition of any or all of its property that is possessed by individual stockholders of a business corporation   *   *   *." When we compare the right which a stockholder has in an ordinary business corporation under sections 20 and 21 of the Stock Corporation Law, we find that the right there given consists of two distinct elements, first, that before such sale or conveyance shall be made a consent must be obtained at a meeting of the stockholders. In addition, any stockholder not voting in favor of the sale or conveyance may object to the sale and conveyance and demand payment for his stock, subject to appraisal. In subdivision 4 of section 21 of the Personal Property Law, quoted above, we find that it is provided that the stockholders of a salvage

corporation shall have the same right to give or withhold their consent to the confirmation of any sale or other disposition of any or all of its property that is possessed by individual stockholders of a business corporation. Thus the first right given under sections 20 and 21 of the Stock Corporation Law is expressly given and no mention is made of the second right, namely, the right of appraisal. Furthermore, whenever the Legislature has intended to confer the right of appraisal, payment and withdrawal, it has taken pains to confer this right by express grant, which is lacking in subdivision 4 above. Thus in section 14 of the Stock Corporation Law, providing for the issuance of stock to employees, it is specifically provided that a protesting stockholder " shall have the right, subject to the conditions and provisions of section twenty-one, to have such stock appraised and paid for as provided in said section." In section 36, where a corporation alters its capital structure, the Legislature has conferred this right by express grant. Again, where a merger is provided for, in section 85, subdivision 7, the right of appraisal and payment has been specifically provided for. Again, where provision is made for the consolidation of corporations, in section 87, the same right of appraisal and payment is provided for. Also, by section 91, where consolidation with a foreign corporation is permitted, the same express grant of the right of appraisal and payment is set forth. Thus, in subdivision 4 above quoted, providing for salvage corporations, not only does the express provision that the stockholder shall have the power to give or withhold consent by vote lend argument that the right of appraisal and payment are thereby excluded, but also the omission of an express grant for appraisal and payment is not without significance. Moreover, when we seek to apply the right of appraisal and payment to dissenting stockholders, where a corporation issues stock to its employees, where it alters its capital structure, where it merges, or consolidates, we do not find that the whole purpose of the corporation is disarranged. But where a liquidating corporation is salvaging mortgaged

property, the whole heart of the plan is disrupted if minority participants may force their associates to raise new money to buy them out. It would thus be unreasonable in seeking to find the legislative intent not to give weight to the omission in the salvage statute in providing for appraisal and payment of the shares of stock. The right to vote to authorize or confirm any sale is a right separate and distinct from the additional right to withdraw from the enterprise, to have the stock appraised and to receive payment therefor. This latter right is not a necessary and inseparable element of the right to be consulted, nor is it necessarily involved in or implied by the right to be consulted. The right to withdraw and compel appraisal and payment is a separate right to be created by its own legislative grant.

Finally, subdivision 4 provides that a salvage corporation formed thereunder shall have the powers of a business corporation. It does not provide that such salvage corporation shall have more power than a business corporation. If sections 20 and 21 of the Stock Corporation Law were read literally, a five- and ten-cent store 'could not sell a paper of pins without a two-thirds vote of its stockholders, for it would be literally within the words of the statute as the corporation would be selling part of its property. The courts, therefore, have imposed on the generality of the language of the statute necessary limitations of application in whose absence the statute would lead to injustice or absurdity. The test applied by the courts is not the amount involved, but the nature of the transaction, whether the sale is in the regular course of the business of the corporation and in furtherance of the express objects of its existence, or something outside of the normal and regular course of the business. (*Matter of Timmis,* 200 N. Y. 177, 181, 182.)

Applying this test to the case at bar, we find the sale of the property in order to carry out the liquidation and distribution of the assets to the stockholders, was the explicit purpose, indeed the only purpose, for the organization of the corporation and manifestly was a sale in the regular

course of its business. That was the very object for which the corporation was formed and for which it existed. Indeed to allow an individual dissenting stockholder to obtain appraisal and payment for his stock would defeat the very object for the formation of the corporation. Appraisal and payment for one, two or three stockholders, ahead of their associates, such as appellants seek, would accord to them a preferential position at variance with the very purpose of the corporation. It is not too much to say that such corporation has nothing wherewith to create such a preference save by selling out the other associates.

The order appealed from should be affirmed, with costs.

LEWIS, J. (dissenting). The sale by the respondent, Twenty-six Sixty Broadway Corporation, of a building which was its principal asset, and its acceptance in payment therefor of $25,000 in cash and a mortgage of $475,000, was validated by corporate action taken pursuant to section 20 of the Stock Corporation Law. Concededly the transaction received the formal consent of more than two-thirds of the respondent's stockholders. However, I do not find in that circumstance a legal reason why the three appellants, as non-consenting stockholders, are required to accede to the sale which, in result, requires them to accept, in place of the aliquot interests formerly owned by them in the property sold, a like proportion in a mortgage upon the premises in an amount equal to nineteen-twentieths of the sale price.

It is not denied that before the sale was consummated in accord with section 20 of the Stock Corporation Law the appellants, in good faith, served upon the respondent timely written notices of their objections to the sale and demanded payment for their stock. Nor is it denied that pursuant to section 21 of the Stock Corporation Law, and as a means of enforcing their demands, the appellants, within the statutory period, instituted the present proceedings to bring about an appraisal of their respective stock holdings.

The business of the respondent corporation is not the purchase and sale of real estate generally. According to answers interposed in these proceedings the respondent corporation was organized " for the purpose of holding title to a single parcel of real estate," and its articles of incorporation authorize it " To acquire, hold, manage, improve, develop, sell, mortgage or lease * * *" that single parcel of real property. It also appears that after it had acquired upon foreclosure sale the building at 2660–2668 Broadway, which then comprised its chief asset, it " administered, managed, utilized and operated" the premises " for the benefit of the various estates, funds and persons [including the appellants] entitled to participating shares in the original mortgage * * *."

As stockholders of the respondent corporation, the appellants had the right, under section 20 of the Stock Corporation Law and in the exercise of their business judgment for the protection of their own interests, to withhold their consent to the sale for $500,000 of the corporation's chief asset under a contract which called for a cash payment of only $25,000 and a mortgage for the balance of the purchase price. I find no provision in section 21 of the Personal Property Law or any other statute which, by direct statement or by implication, requires of the appellants, as non-consenting stockholders, that they acquiesce in the change in the assets of the corporation which results from the corporate action thus taken. To the contrary, when the Legislature enacted section 21 of the Personal Property Law it specifically provided (subd. 4) that the stockholders of a business corporation, such as the respondent — organized to acquire property which is the subject of sale on foreclosure — " *shall have the same power to vote to authorize or confirm any sale*, mortgage, lease, option or other disposition *of any or all of its property that is possessed by individual stockholders of a business corporation* * * *." (Emphasis supplied.) Thus did the Legislature preserve to non-consenting stockholders the statutory rights which the appellants now invoke under sections 20 and 21 of the Stock Corporation Law.

As I view the decision about to be made it construes section 21 of the Personal Property Law in such a way as to limit the rights of non-consenting stockholders, upon the sale of corporate assets, in derogation of rights previously granted to such stockholders by sections 20 and 21 of the Stock Corporation Law and preserved to them by section 21, subdivision 4, of the Personal Property Law. In other words, the court, by judicial construction, is about to enlarge the scope of the statute as to a subject upon which I find expressed therein a contrary legislative intent. We have no right by interpretation to add to or take away from the clear mandate of the statute.

The orders should be reversed and the petitioners' application for the appointment of appraisers pursuant to sections 20 and 21 of the Stock Corporation Law should be granted.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur with FINCH, J.; LEWIS, J., dissents in opinion in which LEHMAN, Ch. J., and CONWAY, J., concur.

Order affirmed.