In the Matter of HYMAN ROSENSHEIN et al., Respondents, *v.* COL-MOT HOLDINGS, INC., Appellant.

First Department, June 19, 1962.

*Jacob Seymour Linett* for appellant.

*Raymond A. Werchen* for respondents.

McNALLY, J. The question presented is whether objecting stockholders of respondent, a domestic real estate corporation, are entitled to an appraisal of their stock pursuant to sections 20 and 21 of the Stock Corporation Law because of the sale of respondent's motel in Florida, the ownership and operation of which was at the time of the sale its sole business. Respondent's amended certificate of incorporation requires the consent of the holders of 70% of its stock " for the transaction of any and all business at any and all meetings ". Special Term has concluded the said provision of respondent's amended certificate entitles the petitioners to an appraisal and that whether the sale was made in the regular course of business is immaterial.

At common law a corporation may not so dispose of its property as to end its existence and prevent it from carrying on the business for which it is incorporated. (*People* v. *Ballard,* 134 N. Y. 269, 296; *Abbot* v. *American Hard Rubber Co.,* 33 Barb. 578.)

In order to enable a corporation to sell its business in the face of the opposition of a minority, chapter 638 of the Laws of 1893 was enacted and later reflected and amplified in section 16 of the Stock Corporation Law (L. 1909, ch. 61). Section 16 authorized a stock corporation, with the consent of the holders of two thirds of its stock, to " sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof to a domestic corporation ", subject to the right of appraisal of nonconsenting stockholders. Section 20 of the Stock Corporation Law derives from former section 16. Although literally bringing within its ambit ordinary sales in the regular course of business, the right of appraisal under section 20 as originally enacted was by construction limited to transactions outside the regular course of business. (*Matter of Miglietta* [*2660 Broadway Corp.*], 287 N. Y. 246, 254–255.)

To make clear that authorization of stockholders was necessary only as to a sale not made in the regular course involving all or substantially all of the corporation's business, the 1953 session of the Legislature enacted a bill to amend section 20. (Sen. Int. No. 810, Print No. 844.) Governor Dewey in an accompanying veto memorandum dated April 8, 1953 stated:

" ' An Act to amend the stock corporation law, in relation to voluntary sale of property, rights, privileges and franchises of a corporation.'

" This bill is designed to provide a desirable recodification of the provisions of the Stock Corporation Law dealing with the sale and conveyance by a corporation of its corporate assets. The present statute, read literally, would appear to require the consent of the holders of two-thirds of the outstanding shares as a necessary prerequisite to the sale and conveyance of any corporate property and to grant to dissenting stockholders in such cases the right to demand an appraisal of their stock and payment therefor.

" In interpreting the statute, however, the courts have limited its applicability to cases in which the transfer works a practical dissolution of the corporate business, wholly or in some important part, and the sale is not in the regular course of business.

" This bill would require stockholders consent and continue the right of appraisal for dissenting stockholders only in cases where the transfer is made outside the course of regular business and the corporation disposes of ' all or substantially all ' of its property, rights, privileges and franchises.

" The language is too broad. It is patent that the corporate purpose may, in fact, be abnegated by a transfer of less than all of its property if the portion conveyed constitutes an integral portion of the corporate assets. While it may be desirable to eliminate the right of appraisal in such cases in order to avoid a heavy drain on the cash assets of the corporation and vexatious litigation, there has been no showing that the requirement for approval by the holders of two-thirds of the shares of the corporation is unreasonable and should be eliminated.

" The bill is disapproved." (N. Y. Legis. Annual, 1953, pp. 365–366.)

It is to be noted Governor Dewey's specific objection was that the bill did not provide for the consent of stockholders on " a transfer of less than all of its [the corporation's] property if the portion conveyed constitutes an integral portion of the corporate assets ". The Governor also suggested the consent of the holders of two thirds of the stock also should be required

although in such case the elimination of the right of appraisal might be desirable to avoid depletion of assets and vexatious litigation.

Thereafter chapter 810 of the Laws of 1954, present section 20, was enacted and approved by Governor Dewey; its relevant provisions are:

" A stock corporation, except as otherwise provided by law or by its certificate of incorporation or other certificate filed pursuant to law, may voluntarily sell, lease or exchange its property, rights, privileges and franchises, or any interest therein or any part thereof; provided, however, that if such sale, lease or exchange is not made in the regular course of business of the corporation and involves all or substantially all of its property, rights, privileges and franchises, or an integral part thereof essential to the conduct of the business of the corporation, such sale, lease or exchange shall not be made without the consent of either the holders of record of all of its outstanding shares entitled to vote thereon given in writing without a meeting or the holders of record of two-thirds of its outstanding shares entitled to vote thereon obtained at a meeting of the stockholders called pursuant to section forty-five.   *   *   *

" If the sale, lease or exchange may not be made without the consent of stockholders and such consent is obtained at a stockholders' meeting, any stockholder entitled to vote thereon and not voting in favor of such proposed sale, lease or exchange may at any time prior to the vote thereon   *   *   *   object to such sale, lease or exchange and demand payment for his stock, and thereupon such stockholder or the corporation shall have the right, subject to the conditions and provisions of section twenty-one, to have such stock appraised and paid for as provided in said section."

The initial clause of present section 20 affirms the right of a stock corporation to sell, lease and exchange property in the regular course of business, except as circumscribed by statute or certificate filed pursuant to law; the second clause expressly excludes from the application of the first clause any disposition not in the regular course of business. (See N. Y. Legis. Annual, 1954, pp. 85, 87, 88.)

The judicial construction of prior section 20 unmistakably limited the right of appraisal of a nonconsenting stockholder to transactions not in the regular course of business. The dominant legislative purpose was to incorporate the said judicial limitation into section 20. The sole objection to the 1953 bill, as outlined in the veto memorandum (*supra*), was its omission

to include a disposition of "an integral portion of the corporate assets" within transactions outside the regular course of business. The suggested inclusion is reflected in the 1954 bill which is present section 20.

The second clause of section 20 pertains to dispositions not in the regular course of business and as to such requires the written consent of the holders of all the outstanding shares or the consent of the holders of two thirds of such shares at a stockholders' meeting. It also provides for appraisal of the stock of an objecting or nonconsenting holder if the disposition "may not be made without the consent of stockholders". In the instant case it has been found that the sale, by force of respondent's amended certificate, required the consent of the holders of 70% of its outstanding stock and hence, under the provisions of the initial clause of the first and the last-quoted initial clause of the second paragraph of present section 20, the petitioners are entitled to an appraisal of their stock.

We conclude the judicial construction of prior section 20 motivated the enactment of present section 20, which was intended to and does incorporate as a condition of the right of appraisal that the transaction be outside the regular course of business of the corporation, which the courts of this State previously had held to be the *sina qua non* of the right of appraisal. The initial clause of the second paragraph in referring to a disposition which "may not be made without the consent of stockholders" has reference only to the transactions described in the second and following clauses of section 20; it has no application to transactions in the regular course of business which at common law did not require the consent of stockholders and are embraced in the first clause of the first paragraph of present section 20. Stated differently, insofar as the initial clause of the second paragraph of present section 20 alludes to transactions which "may not be made without the consent of stockholders", it has reference to the consent required under the second clause of the first paragraph, a statutory requirement which may not be dispensed with.

To sustain petitioners' position is to acknowledge a 5- and 10-cent store similarly situated "could not sell a paper of pins without a [70%] vote of its stockholders". (*Matter of Miglietta*, 287 N. Y. 246, 254, *supra*.) It is not to be assumed the amendment of section 20, prompted by prior judicial construction, and specifically *Matter of Miglietta* (*supra*) (see N. Y. Legis. Annual, *supra*, p. 87), admits of the extreme result of which *Miglietta* was critical.

We have assumed the respondent's amended certificate is one within the meaning of the first clause of the first paragraph of present section 20. The relevant part of the amended certificate is as follows: " The consent of the holders of all the shares of seventy percent of the stock of this corporation issued and outstanding shall be necessary for the transaction of any and all business at any and all meetings of the holders of said stock and no action of any of the stockholders at any such meeting shall be valid or effective except upon such consent."

The said provision alludes to meetings of stockholders. The sale in the regular course of business of property of a corporation need not be approved by stockholders.* The stockholders' agreement of May 1, 1959 provides for the consent of the holders of 70% of the outstanding stock to " the sale of the property owned by the Corporation ". It is only by reference to the agreement that the consent of stockholders is required, and the agreement, an unfiled, private document is not the filed certificate required under sections 9 and 20. (See 1948 Report, Law Rev. Comm., pp. 385–389.) The consent required and obtained by force of the agreement is not one within the meaning of either section 9 or the first clause of section 20.

We hold on the authority of *Eisen* v. *Post* (3 N Y 2d 518) and *Matter of Roehner* v. *Gracie Manor* (6 N Y 2d 280) that the instant sale was within the regular course of business of the respondent and the petitioners are not entitled to an appraisal of their stock by reason thereof.

The order directing an appraisal should be reversed, on the law and on the facts, with costs to respondent-appellant, and petitioners-respondents' motion therefor denied.

VALENTE, J. (concurring). I join in the opinion of McNALLY, J. with the following comments. Section 20 of the Stock Corporation Law (giving an objecting stockholder of a corporation the right to have his stock appraised) becomes applicable, as I read it, only in cases where the sale, lease or exchange of substantially all of the property of a corporation is not effected in the regular course of business. In such instance, the requisite consent of stockholders is mandated by the statute and dissenting stockholders may have their stock appraised. There is no such requirement where a sale is made in the regular course of business; and the transaction involved in the instant proceeding

---

- * Section 9 of the Stock Corporation Law enables provisions in an original or amended certificate increasing the number of votes otherwise required for certain purposes. We do not now decide whether it is possible by provision in such a certificate to enlarge the statutory right of appraisal.

was in the regular course of business (*Eisen* v. *Post,* 3 N Y 2d 518). The provisions in the stockholders' agreement and the amended certificate of incorporation prescribing consent of 70% of the stockholders for a sale do not affect or limit the application of section 20. Their only impact is to restrict the power of the corporation to dispose of its property in the regular course of its business. But once the consent of 70% of the stockholders has been obtained, to a sale in the regular course of business, the objecting stockholders have no right to an appraisal. The words in section 20 referring to '' consent of stockholders '' should not be read — in isolation from the context of the entire section — to give a right of appraisal to an objecting stockholder simply because the stockholders' agreement or certificate of incorporation requires a certain percentage of stockholder assent for sales in the regular course of business. The test is whether the sale, lease or exchange is in the regular course of business. If it is, then there is no right of appraisal in a dissenting stockholder regardless of the percentage of stockholders' assent that may be required (and has been obtained) to approve the transaction.

RABIN, J. P., and EAGER, J., concur with McNALLY and VALENTE, JJ.; STEVENS, J., concurs in result only.

Order entered on November 24, 1961 unanimously reversed, on the law and on the facts, with $20 costs and disbursements to the appellant, and the motion denied.