199 A.2d 557 (1964)
The PHILADELPHIA NATIONAL BANK, a national banking association organized under the laws of the United States of America, Trustee under Indenture dated as of December 1, 1961, of B. S. F. Company, Plaintiff,
v.
B. S. F. COMPANY, a Delaware corporation, and Glen Alden Corporation, a Pennsylvania corporation, Defendants.
Court of Chancery of Delaware, New Castle.
March 20, 1964.
S. Samuel Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Ralph Earle, II, of Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.
Henry M. Canby, of Richards, Layton & Finger, Wilmington, and Royall, Koegel & Rogers, New York City, for defendant B. S. F. Co.
David F. Anderson, of Berl, Potter & Anderson, Wilmington, for defendant Glen Alden Corp.
MARVEL, Vice Chancellor.
In December 1961, plaintiff, a national banking association, and the defendant B.S.F. Company entered into a trust indenture in which plaintiff agreed to serve as trustee in connection with the proposed issuance by B.S.F. Company of $2,500,000 of 5¾% convertible subordinated debentures. The indenture, which was executed and *558 acknowledged in Philadelphia, Pennsylvania, on December 28, 1961, sets forth the terms and conditions governing the issuance of the proposed debentures including the covenants of the issuer in respect thereto. The debentures to be issued were to be subordinated and junior in right (but as to principal only) to any outstanding or later incurred corporate indebtedness to banks. They were to be convertible under designated terms into stock of the issuer, or of its successor, in the event of consolidation, merger or transfer of B.S.F.'s property "* * * as, or substantially as, an entirety". Unless sooner converted or redeemed such debentures were to mature on December 1, 1969.
Plaintiff's suit for a declaratory judgment seeks an order from this Court authorizing the plaintiff to treat the indenture as breached by B.S.F. and declaring that the debentures provided for thereunder are accordingly subject to redemption because of B.S.F.'s sale of what plaintiff contends was, in the words of the indenture, "* * * all or substantially all of its property[1] * * *" to the defendant Glen Alden Company without obtaining from such purchaser an agreement to assume "* * * in a manner satisfactory to the Trustee[2] * * *" all contractual obligations of B.S.F. The amount so claimed is 105% of the principal amount of such debentures plus accrued interest.
Debentures authorized by the indenture were outstanding as of the date of argument in the amount of $2,470,000, and the relief sought by plaintiff, if granted, will result in resort to a so-called deposited fund maintained by B.S.F. in an agreed total amount of $2,625,000 as provided for in a supplemental indenture (entered into in purported compliance with provisions of the 1961 indenture) for the purpose of redeeming the presently outstanding debentures, such supplemental indenture having been entered into by plaintiff and defendants on May 28, 1963.
On the basis of its motion filed under Rule 56, plaintiff seeks a summary declaratory judgment directing the carrying out of such course of redemption. B.S.F. Company's answer denies that it has breached its covenant not to sell all or substantially all of its property. It contends alternatively that if the controversial transaction here in issue should be held to have been a sale of "* * * all or substantially all of its property * * *", the supplemental indenture, to which the purchaser of such property is a party, supplies the assumption of liability undertaking contemplated in Section 1 of Article XIV of the 1961 indenture. B.S.F. Company has also moved for summary judgment, and there being no material facts in dispute, the merits of the case may be decided on the pending motions. While the defendant Glen Alden filed an answer to the complaint, it has taken no part in the pending motions.
The controversy here in issue arises out of the sale by B.S.F. Company of 349,222 shares of common stock of the American Hardware Corporation to the defendant Glen Alden Corporation for the sum of $13,345,825. Such agreement, entered into by the contracting parties on January 21, 1963 (notice of which was given to the debenture holders on March 27, 1963, at the suggestion of the trustee) provided inter alia that the seller would use its best efforts to obtain "* * * the authorization of this Agreement and of consummation hereof provided in Section 271 of the General Corporation Law of the State of Delaware * * *". Charging a breach of covenant on the part of B.S.F. Company not to sell all or substantially all of its property, plaintiff notified B.S.F. that inasmuch as such a transaction would, in its opinion, constitute a disposal of B.S.F.'s basic asset, the property rights of the debenture holders were thereby threatened and that it proposed to seek an order enjoining consummation of such proposed sale. However, an arrangement for protecting *559 the rights of the debenture holders pending a judicial ruling on the legal effect of the proposed transaction having been worked out between counsel for B.S.F. and the trustee, the stockholders of B.S.F. met and approved such sale on May 20, 1963.[3]
B.S.F. Company is the successor to Birdsboro Steel Foundry & Machine Company, a Pennsylvania corporation, which until December, 1954 was engaged in manufacturing, such corporation having been caused at that time to sell its assets for $3,970,000. B.S.F. Company thereafter pursued a policy of purchasing shares of stock of other companies, proceeding first with purchases of stock of American Hardware Company and of New York Factors, Inc. In December 1955, plaintiff obtained a Delaware charter[4] and thereafter continued to buy into American Hardware. At the time the debentures here involved were offered for sale, B.S.F. had become the owner of 28.3% of the common stock of American Hardware. Following the sale of the debentures here in issue, B.S.F. continued to make purchases of American Hardware stock, and by December 31, 1962 it had acquired a total of 349,222 such shares, representing approximately 32% of Hardware's total outstanding common stock. Thereafter, finding itself unable to retain what had been effective control of American Hardware and confronted with serious financial difficulties, B.S.F.'s new board of directors decided on a course of liquidation, the principal asset available for sale being its American Hardware stock.
B.S.F. concedes that as of December 31, 1962, its American Hardware stock represented 84.7% of its total assets at market value. Since the price which Glen Alden agreed to pay for such stock was approximately $700,000 greater than its then market price, such shares represented an even greater percentage of B.S.F.'s total assets as of the time of their sale. While B.S.F. argues that such stock represented only 47.4% of B.S.F.'s total assets, calculated on a consolidated basis as of the time of the issue of the debentures, such calculation appears to be based on an over-evaluation of the net worth of New York Factors, Inc. In short, I agree with the trustee's contention that B.S.F.'s American Hardware stock as of the date of the issue of the debentures here in issue constituted at least 75% of its total assets and that such percentage is a conservative figure in light of the fact that the assets of New York Factors, Inc. were continuing to decline in value.
The trustee accordingly contends that since its holdings of American Hardware stock represented at least three fourths of B.S.F.'s total assets when the debentures were issued (a proportion increased to approximately 90% as of the time of the sale of such stock), the covenant against selling all or substantially all of B.S.F.'s assets must be read as applying to the sale of this particular asset. The trustee also points out that a large part of B.S.F.'s total income was derived from dividends on its American Hardware stock and that such property, alone of B.S.F.'s holdings, demonstrated any substantial growth potential as of the time of its sale. Furthermore, when B.S.F. sold such stock, cash became its only asset of any consequence. The trustee accordingly concludes that in the light of the value of such stock in relation to that of B.S.F.'s other assets, during the relevant period, that upon its sale the debenture *560 holders became entitled to have their securities redeemed on the theory that the indenture was intended to protect them from any possible adverse results of B.S.F.'s reinvestment of the proceeds of such a sale. The trustee further argues that even if the language of the indenture is not read as a direct assurance to the debenture holders that B.S.F.'s American Hardware stock would not be sold, nonetheless it applies to a sale such as the one here in dispute, the debenture holders having been assured by the indenture that B.S.F. would not discontinue the business in which it was principally engaged as a result of either consolidation, merger, or sale of all or substantially all of its assets unless the successor corporation were to assume all of B.S.F.'s obligations under the indenture.
Answering such contentions, B.S.F. argues that from the time of its incorporation in Delaware in 1955 it engaged solely in the business of seeking to acquire control of worthwhile commercial enterprises and that its purchase of a substantial stock interest in American Hardware was in furtherance of a corporate purpose set forth in its certificate of incorporation. It contends that while its holdings of American Hardware stock concedely came to constitute its most significant asset, it never made any representation to its security holders that such stock would not be sold and the proceeds thereof re-invested. And while conceding that in 1956 it obtained an exemption from registration under the Investment Company Act by representing[5] that it was not primarily engaged in the business of investing, B.S.F. contends that such exemption was consistent with its stated corporate purpose of being engaged in purchasing stock of various enterprises for the purpose of obtaining control. On October 16, 1956, the SEC made the following finding:
"On the basis of the record we find that B.S.F. is now primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding or trading in securities and that it has ceased to be an investment company."
According to the trustee, such finding establishes that B.S.F. was thereafter primarily engaged in the business of manufacturing hardware and to a lesser extent in factoring and that debenture buyers were entitled to rely on B.S.F.'s representations to the Securities and Exchange Commission that the company would not engage in the business of investing or trading in securities notwithstanding the fact that the prospectus issued in connection with the offer of the debentures stated:
"It is the Company's policy to play an active role in the management of controlled corporations without disturbing internal relationships. It places certain of its officers and directors on the board of directors of such corporations and assists them in developing new business opportunities for such corporations."
And while the fact is that after the issuance of the debentures in 1961 but prior to the sale of the American Hardware stock in 1963, B.S.F., having lost working control of American Hardware, lost its Securities and Exchange Commission exemption under the Investment Company Act, can it be reasonably said that the sale under attack was actually one made in the ordinary and regular course of business?
*561 Under the terms of Article II Section 12 of the 1961 Indenture, B.S.F. covenanted that it would not:
"* * * consolidate or merge with, or sell all or substantially all of its property to, any other company except upon compliance with the provisions of Section 1 of Article XIV hereof."
Article XIV, Section 1 provides as follows:
"For every purpose of this Indenture, the terms `Company' and `B.S.F. Company' include and mean not only the party hereto of the first part, but also any successor corporation formed by consolidation or otherwise, and any corporation with which the Company may be consolidated or merged, or which may acquire all or substantially all of the property of the Company, provided that the Company shall not consolidate or merge with, or sell all or substantially all of its property to, any other corporation unless such other corporation formed by or resulting from such merger or consolidation or acquiring said property shall first execute and deliver to the Trustee an indenture supplemental hereto whereby the said corporation shall, in a manner satisfactory to the Trustee, assume the due and punctual payment of the principal of and the interest and premium, if any, on all Debentures outstanding hereunder and the performance of all of the covenants and obligations herein contained on the part of the Company."
The precise question before the Court being whether or not disposal of the Hardware stock constituted such a sale of property as to bring into play the safeguards contained in the indenture, the language of the indenture must be analyzed in the light of the law dealing with sales of corporate assets. While no pertinent Pennsylvania case is cited, the critical factor in determining the character of a sale of assets is generally considered not the amount of property sold but whether the sale is in fact an unusual transaction or one made in the regular course of business of the seller, many of the reported cases dealing with the question having the problem simplified because of the involvement of a seller engaged in the business of buying and selling real estate or the like. Here, the paragraph of B.S.F.'s charter, on which the corporation principally relies, authorizes it to purchase and sell shares of stock of any corporation. However, the language used is no more than a paraphrase of a power granted to all Delaware corporations by § 123 of Title 8 Del.C. In other words, can it be reasonably said that the sale here made was not a sale of assets but rather one made in furtherance of express corporate objects in the ordinary and regular course of the business? While the insertion of broad and diverse powers in modern corporate charters often makes it difficult to isolate a primary purpose, nonetheless, in the cases permitting drastic disposals of property over statutory stockholder objection, the corporate power so to do appears to be adequately spelled out. See In re Miglietta, 287 N.Y. 246, 39 N.E. 2d 224 and Jeppi v. Brockman Holding Co., 34 Cal.2d 11, 206 P.2d 847, 9 A.L.R.2d 1297 and, Annotation at 1306. In the two cited cases the corporations involved were in fact organized to carry out liquidations.
The language used in the indenture, namely that B.S.F. would not "* * * sell all or substantially all of its property * * *" is similar to that used in statutes governing sales of corporate assets. Thus, the Pennsylvania Business Corporation Law, Section 311, subd. B (15 Purdon's Stat. § 2852-311, subd. B) requires stockholder approval of a "* * * sale, lease, or exchange of all, or substantially all, the property and assets, with or without the good will of a corporation * * *" and gives a right of appraisal to dissenters. The undertakings set forth in the indenture here in issue, which was executed and acknowledged in Philadelphia, were to be performed in Pennsylvania in all essential respects. And I have no doubt but that Pennsylvania law should govern its interpretation. *562 The purpose of the Pennsylvania sale of corporate assets statute has been stated to be to protect a stockholder from being "* * * projected against his will into a new enterprise under terms not of his own choosing * * *". Farris v. Glen Alden Corporation, 393 Pa. 427, 143 A.2d 25. However, the Pennsylvania statute exempts from stockholder approval sales carried out in the ordinary course of business. The theory of such exception, however, was not written into the indenture. In the case of Stiles v. Aluminum Products Co., 338 Ill.App. 48, 86 N.E.2d 887, a dissenting stockholder was given the right to recover the value of his shares upon the sale by the corporation of its manufacturing facilities for the sum of $1,406,570, its original primary corporate purpose having been the manufacture of aluminum utensils and the like. Assets consisting of stock in a housing subsidiary, cash, and a used car, stipulated to have a value of $760,622.69, were retained by the corporation. The Court was of the opinion that a sale of substantially all assets under the statute had been accomplished. Such ruling is more persuasive than those cases cited by B.S.F. concerning the impact of the federal tax law on sales of assets. I say this because while B.S.F. indicated in the debenture prospectus and in other ways that its policy was to dispose of securities which did not carry corporate control, on the other hand it continued, as late as December 1962, to emphasize the importance of its American Hardware stock as an asset to be protected. By analogy to the statutory protection of the rights of stockholders, in a situation such as the one at bar, an investor should not be without remedy when his corporation, in breach of contract, abruptly disposes of what has ostensibly been its principal business.
In the light of the information contained in the various documents submitted on the present motions, I conclude that the earnings and growth factor of American Hardware stock was stressed[6] by B.S.F. from the period dating back to the sale of the debentures here in issue, and I can not agree with B.S.F.'s contention that the disposal of this major asset was accomplished in furtherance of duly established corporate purposes and in the ordinary course of business. The other sales of securities consummated by B.S.F. at or about the same time do not compare significantly with that of the American Hardware shares. Furthermore, such other sales were short term transactions in contrast to the $13,345,825 sale under attack, which was made abruptly after the steady accumulation of American Hardware stock by B.S.F. over a seven year period. And the mere fact that some 300,000 shares of such stock had been pledged to secure short term notes to banks and loans payable to brokers does not justify such sale.
Because I am of the opinion that the sale of American Hardware stock constituted a sale of substantially all of B.S.F.'s property, it became incumbent upon the purchaser, Glen Alden Corporation, properly to assume, in the words of the 1961 indenture, "* * * the performance of all of the covenants and obligations herein contained on the part of the Company (including, without limitation of the foregoing, *563 the covenants and obligations contained in Section 4 of Article IV hereof * * *)". And while B.S.F. disputes the applicability of such provision and others of like import in the light of other terms of the indenture bearing on the matter of conversion, any doubt as to the meaning of the indenture must be resolved in favor of the debenture holders. I am satisfied that Glen Alden qualifies as the "other corporation" referred to in Section 4 of Article IV, and it is established on the record that Glen Alden declined to grant debenture holders the right to convert their securities into stock of such corporation. Accordingly, all outstanding debentures issued under the 1961 indenture must be redeemed as provided for in such instrument and the supplement thereto. The trustee's prayer for costs will be considered upon specific application therefor.
Plaintiff's motion for summary judgment is granted and the cross motion of the defendant B.S.F. Company is denied.
Order on notice.
NOTES
[1] Article II Section 12 of indenture.
[2] Article XIV Section 1 of indenture.
[3] B.S.F.'s proxy statement issued with the notice of meeting stated inter alia. . . "The affirmative vote of the holders of a majority of the outstanding capital stock of the Company is necessary for the approval of the agreement (of sale) * * *".
[4] The first paragraph of its charter as to the proposed nature of its business or objects or purposes to be carried out reads: "To conduct researches, investigations and examinations of businesses and enterprises of every kind and description wherever located with the aim of securing information and particulars for the investment and employment of capital".
[5] "Registrant's primary purpose is to control and operate various industries, either by registrant itself or through subsidiaries. Registrant's intent is to cease to be an investment company and to enter a business other than investing in securities. Control of industrial operations, specifically factoring and hardware, is registrant's primary activity  not the business of investing. Accordingly, registrant specifically intends to apply for an exemption order under Section 3(b) (2) of the Act, since registrant is not engaged in the business of investing, reinvesting, borrowing, holding, or trading in securities."
[6] In its 1961 Annual Report, dated March 13, 1962, the directors of B.S.F. reported:

"At the present time, B.S.F. Company owns 32% of American Hardware Company compared with 28% at the end of December, 1960. As and when additional capital funds become available, a primary objective of the Company will be to increase its ownership of American Hardware. Your management believes that it will be in the best interests of B.S.F. and its stockholders to share in the continued growth and favorable earnings trend of American Hardware."
Letter to stockholders dated December 12, 1962: "The principal remaining asset of your company will be its holdings of 350,000 shares of American Hardware stock. Your management is spending a great deal of time and effort in matters relating to American Hardware."