OPINION OF THE COURT
Herman Cahn, J.
Defendants Jonathan Greenwald and Kenin Spivak move for *107 summary judgment (CPLR 3212): dismissing the complaint as against them, on the ground that all of the claims against them are barred by a release; or in the alternative, declaring that Greenwald and Spivak are fully indemnified with respect to all of the claims. Movants also seek to recover attorneys’ fees.
Plaintiff cross-moves for summary judgment (CPLR 3212), declaring that it has sole title to the assets which formerly belonged to Tripoint.com, Inc. (Tripoint).
Factual Allegations
Plaintiff TIC Holdings, LLC (TIC), a limited liability company, was formed in February 2000, as a vehicle for investing in Tripoint, a software development company. Seventeen members invested approximately $1.03 million in TIC. TIC loaned $1 million to Tripoint, and in exchange received a promissory note in the principal amount of $1 million (the note). On December 5, 2000, evidently after a default by Tripoint, TIC foreclosed on Tripoint’s assets (the Tripoint assets).
Three of TIC’s members were: (1) Todd Becker, who allegedly raised more than 87% of TIC’s capital, and held a 5% ownership interest himself; (2) defendant Jonathan Green-wald, who held a 10% ownership interest; and (3) defendant Kenin Spivak, who held a 2.5% ownership interest. Greenwald and Becker were appointed members of Tripoint’s board of directors, in connection with TIC’s investment in Tripoint. Spivak, a personal friend and business associate of Greenwald, was appointed as TIC’s manager, after being recommended for the position by Greenwald.
Becker allegedly advised Greenwald that he would be away on a family vacation, and could not be reached between December 20 and 30, 2000. On December 22, 2000, a Friday before a Christmas holiday weekend, Spivak sent an e-mail to all of TIC’s members, which stated that Tripoint’s financial difficulties had impaired the value of TIC’s investment; that “TIC’s investment likely may be a total loss”; that Greenwald was forming a new company (later to be known as defendant HR Software Acquisition Group, Inc.; hereinafter HRSAG); that, if Spivak did not receive the written objection of a majority-in-interest of TIC’s members by December 28, 2000, he intended to execute binding agreements, on behalf of TIC, pursuant to which “TIC would * * * sell to [HRSAG] the assets that it [had] acquired from Tripoint in exchange for a promissory note from [HRSAG]”; and that Greenwald was of *108 fering to purchase each of the other members’ interests, for an amount equal to 15% of the member’s initial investment (see, Spivak affidavit, 30, exhibit B).
Spivak did not receive an objection to the proposed course of action from a majority-in-interest of TIC’s members by December 28, 2000. Greenwald and Spivak — working with TIC’s attorney, Steven Feldman — prepared documents to effect the transfer of the Tripoint assets from TIC to HRSAG. On January 12, 2001, Spivak, on behalf of TIC, and Greenwald, on behalf of HRSAG, executed a note purchase agreement, pursuant to which TIC agreed to transfer the Tripoint assets to HRSAG, in exchange for a promissory note, in the principal amount of $1 million, to be issued by HRSAG.
Following Becker’s return from his vacation, and his communication with various TIC members, Spivak was removed as TIC’s manager, on January 22, 2001, by a vote of over two thirds of TIC’s members. Spivak formally resigned as TIC’s manager, on January 26, 2001, and Becker thereafter became TIC’s new manager.
HRSAG has taken the position that TIC is obligated to transfer the Tripoint assets to it, pursuant to the note purchase agreement. TIC asserts that the note purchase agreement is null and void, because Spivak was without authority to enter into that agreement on TIC’s behalf, and that HRSAG’s claim to ownership of the Tripoint assets is preventing TIC from obtaining the additional financing required to preserve its investment.
In early February 2001, Spivak and Greenwald each commenced a separate action against Becker and TIC, in this court, allegedly asserting claims, in each instance, for slander, libel, breach of fiduciary duty, and tortious interference with prospective economic advantage.
The complaint in this action, filed in March 2001, asserts six causes of action for: (1) breach of fiduciary duty, against Spi-vak and Greenwald, on various grounds relating primarily to the note purchase agreement; (2) intentional interference with TIC’s ability to obtain financing, against Spivak and Green-wald; (3) breach of fiduciary duty, against Spivak and Green-wald, on the ground that they directed Feldman to charge TIC for legal services performed by him for Greenwald and HR-SAG; (4) conversion, against Spivak, on the ground that he caused TIC to pay the aforementioned legal charges; (5) misappropriation of TIC’s business opportunity, against Greenwald and HRSAG; and (6) a declaration that TIC has sole title to the Tripoint assets.
*109 Discussion
TIC’s Cross Motion
TIC cross-moves for summary judgment on the complaint’s sixth cause of action, declaring that TIC has sole title to the Tripoint assets. The court cannot make such a declaration, because Tripoint is not a party to this action, and such a declaration would, at least in part, be against nonparty Tripoint. Tripoint would be a necessary party to an action seeking a declaration that TIC has sole title to the Tripoint assets, because Tripoint “might be inequitably affected” by such a declaration (see, CPLR 1001 [a]). “A court may and ordinarily must refuse to render a declaratory judgment in the absence of necessary parties” (Matter of J-T Assoc. v Hudson Riv. — Black Riv. Regulating Disk, 175 AD2d 438, 440 [3d Dept 1991]).
However, TIC has demonstrated its entitlement to a more limited declaration that the note purchase agreement is null and void, ab initio, and did not transfer any ownership interest which TIC had, or may have, in the Tripoint assets, to HRSAG.
The note purchase agreement is null and void, ab initio, because Spivak apparently had no authority to bind TIC to the terms of that agreement. TIC’s transfer of the Tripoint assets would have constituted a transfer of all, or substantially all, of TIC’s assets. Limited Liability Company Law § 402 (d) (2) states that “[e]xcept as provided in the operating agreement, * * * the vote of at least a majority in interest of the members entitled to vote * * * shall be required to * * * approve the sale, exchange, lease, mortgage, pledge or other transfer of all or substantially all of the assets of [a] limited liability company.”
Defendants argue that the power to effect such a transfer is encompassed within the broad authority granted to the manager by TIC’s operating agreement. However, section 5.01.2 of the operating agreement expressly states that the general powers of the manager are “subject in all cases to * * * the requirements of applicable law,” and none of the specific powers allocated to the manager in the agreement overrides the voting requirement set forth in Limited Liability Company Law § 402 (d) (2). The operating agreement does delegate to TIC’s manager the authority to “sell, dispose, trade, or exchange [TIC’s] assets in the ordinary course of [TIC’s] business” (operating agreement § 5.01.2 [c]). However, TIC’s transfer of the Tripoint assets to HRSAG would not have been in the ordinary course of TIC’s business. Even apart from the *110 fact that it would have been a transfer of substantially all of TIC’s assets, such a transfer would have constituted the effective abandonment, or elimination, of the sole express purpose for which TIC had been formed, i.e., to loan money to, and acquire notes or other securities from, Tripoint (see, Gramercy Equities Corp. v Dumont, 72 NY2d 560, 566 [1988]; Matter of Miglietta, 287 NY 246, 254 [1942]; Matter of Kunin, 281 App Div 635, 637 [1st Dept 1953], affd 306 NY 967 [1954]; see also, operating agreement § 2.03).
Defendants argue that Spivak did have the required consent of a majority in interest of TIC’s members to enter into the note purchase agreement, because Spivak’s e-mail told the members that he would bind TIC to an agreement to convey the Tripoint assets to HRSAG “absent the written objection by * * * December 28th, 2000 of a majority-in-interest of TIC’s members,” and because the members did not communicate such an objection to Spivak within the prescribed time period. That argument is untenable, however, in view of the operating agreement’s statement that, except as otherwise provided therein, the required approval for any matter coming before the members shall be by “the affirmative vote of Members holding a Majority in Interest” (operating agreement § 5.02.2 [emphasis added]).
Even assuming, arguendo, that the note purchase agreement was not null and void, ab initio, the court would find that TIC had properly exercised its contractual right to terminate any obligation it may have had to consummate that agreement. Section 2.01 of the note purchase agreement provides that:
“If [HRSAG] fails to satisfy all of its representations, warranties, obligations, covenants and conditions required to be satisfied to achieve the Closing contemplated hereby on or before January 30, 2001, and [TIC] does not waive any such condition not so satisfied, then [TIC] shall have the right at any time thereafter to terminate its obligation to complete the transaction contemplated hereby by transmitting written notice to such effect to [HRSAG].”
HRSAG did not satisfy all of the obligations and conditions which were required of it, in order to close under the agreement on or before January 30, 2001. That fact is evidenced by a letter from HRSAG’s counsel to Becker, dated February 2, 2001, indicating that HRSAG had not yet provided, at that time, “the disclosure schedules and the opinion of counsel *111 required by the [note purchase agreement]” (see, Becker affidavit, exhibit G; see also, note purchase agreement § 7.06). Therefore, TIC acted within its contractual rights when, by letter dated February 5, 2001, it gave HRSAG notice that TIC was electing to exercise its right to terminate the note purchase agreement. (See, Becker affidavit, exhibit D.)
Greenwald’s and Spivak’s Motion
Greenwald and Spivak move for summary judgment on the answer’s first and second counterclaims, dismissing the complaint as against them, on the ground that they have been released from liability for the acts complained of in the complaint, by reason of provisions contained in the operating agreement. Greenwald and Spivak have not demonstrated their entitlement to such relief.
The operating agreement’s release in favor of Greenwald (the Tripoint release) states, in relevant part:
“The [Members of TIC] acknowledge that [Green-wald] and [Becker] are or may become officers, directors or otherwise have a separate financial interest in Tripoint, and that Interactive Capital, Inc., an Affiliate of [Greenwald] (‘Interactive’), may have certain rights under * * * the [note purchase agreement entered into by TIC and Tripoint] concerning the election of directors to Tripoint’s Board of Directors. [TIC], on behalf of its members, manager, * * * [and] representatives * * * (the ‘Releasing Parties’), hereby irrevocably and unconditionally relieve, release and forever discharge, [Greenwald], [Becker], [and] Interactive * * * (the ‘Released, Parties’), of and from, all claims * * * , causes of action and claims for relief, of whatever kind or nature, whether known or unknown, arising from or relating to, any claim of conflict of interest or breach of fiduciary duty or similar claim arising out of financial interests and/or actions heretofore taken or taken in the future by the Released Parties in (i) their capacities as parties to contracts with [TIC] and/or Tripoint, and/or (ii) their capacities on behalf of Tripoint; and/or (iii) any actions that any of them may take in relinquishing any of the foregoing positions; and/or (iv) their respective self-interests, provided in any event that this release will not include claims arising from any failure to disclose information required to be disclosed for related party transactions *112 under the securities laws or corporate laws of any jurisdiction in which [TIC] does business.” (Operating agreement § 8.01.)
Defendants argue that the Tripoint release was intended to release Greenwald from any claims which might be asserted against him by TIC.
However, the court cannot determine as a matter of law at this time that the Tripoint release releases Greenwald from any liability for the claims asserted in the complaint, because:
(1) the Tripoint release by its own terms was intended to encompass only claims arising from financial interests acquired by the released parties, and actions taken by them, in connection with their dual involvement in both TIC and Tripoint, and
(2) the claims asserted in the complaint allegedly arise from financial interests acquired by Greenwald, and actions taken by him, which were not related to his dual involvement in TIC and Tripoint.
This finding is supported by several factors. First, the scope of the Tripoint release must be determined in the light of its stated purpose (see, Demaria v Brenhouse, 277 AD2d 344, 345 [2d Dept 2000]; Enock v National Westminster Bankcorp, 226 AD2d 235, 235-236 [1st Dept 1996]), which, as the first sentence of the release clearly indicates, was to protect the released parties from liability with respect to the conflicts of interest which would inevitably arise in connection with their simultaneous involvement with both TIC and Tripoint. Second, the Tripoint release was granted only to parties which would be performing functions on behalf of Tripoint (i.e., Becker, Greenwald, and Interactive), and not to other parties. Third, such a finding is consistent with certain other provisions of the operating agreement, including section 5.04.2, which states that “the Members acknowledge that [Greenwald] and [Becker], Members of [TIC], will serve as directors of Tripoint, and each other Member hereby releases, waives and relinquishes any and all claims against such Members, and against Interactive Capital, Inc. * * * in connection therewith” (emphasis added).
Fourth, and finally, the scope of the last prong of the Tripoint release (which encompasses “financial interests and/or actions * * * taken * * * by the Released Parties in * * * their respective self-interests”) would be insupportably broad, if it is not understood as being limited to matters arising in connection with the released parties’ dual involvement with TIC and Tripoint. Such an overbroad construction would render much of the language contained in the Tripoint release mere *113 surplusage, since a release from liability for all actions taken by the released parties in their own self-interests could have been expressed much more simply and directly.*
Nor, even if the Tripoint release had been intended to release the released parties from liability for all actions taken by them in their own self-interests, could such an intent be given full effect. For example, a release is ineffective to insulate a releasee from wilful or intentional misconduct (see, A.H.A. Gen. Constr. v New York City Hous. Auth., 92 NY2d 20, 31 [1998]; Koerick v Lotito, 262 AD2d 367 [2d Dept 1999]; Metropolitan Life Ins. Co. v Noble Lowndes Intl., 192 AD2d 83, 89 [1st Dept 1993], affd 84 NY2d 430 [1994]). A fair reading of the complaint suggests that at least certain of the wrongful acts attributed to Greenwald therein, if they occurred as alleged, may have been wilful or intentional, e.g.: his alleged breaches of fiduciary duty; his allegedly intentional interference with TIC’s ability to obtain financing; and his alleged attempt to misappropriate a business opportunity from TIC.
For the foregoing reasons, Greenwald’s motion that he is released from the claims asserted in the complaint is denied.
The operating agreement’s release in favor of TIC’s manager (the manager release), which Spivak claims bars the complaint’s causes of action as against him, states that:
“[t]he [Tripoint release] shall also include the Manager with respect to all actions taken by the Manager in his or her capacity as Manager, including, without limitation, his or her decision to waive (or not waive) conditions or breaches by Tripoint, to fund (or not fund) the First Funding and/or either Subsequent Advance or both Subsequent Advances, and to make (or not to make) any Capital Calls.” (Operating agreement § 8.02.)
However, the complaint’s causes of action against Spivak are not barred by the manager release, because those claims allege that Spivak is liable not for actions which he took in his capacity as manager, but rather for actions taken by him which were not properly within his capacity as manager, e.g., his attempt to bind TIC to the terms of the note purchase agreement, when he had no authority to do so.
Moreover, Limited Liability Company Law § 417 (a) (1) states that no provision of an operating agreement shall eliminate or *114 limit “the liability of any manager if a judgment or other final adjudication adverse to him * * * establishes that his * * * acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law.” The complaint’s first cause of action alleges that Spivak breached his fiduciary duty to TIC, by, inter alia: attempting to gain a prospective economic advantage with respect to TIC; failing to advise TIC and its members of his conflicts of interest; creating a situation in which he was interested primarily against TIC; failing to protect TIC’s interests in its negotiations with HRSAG; and improperly purporting to execute the note purchase agreement on TIC’s behalf. The second cause of action alleges that Spivak has intentionally interferred with TIC’s ability to obtain financing. Since TIC’s claims could potentially result in an adjudication adverse to Spivak, which establishes that his acts were in bad faith, or involved intentional misconduct, or a knowing violation of the Limited Liability Company Law, defendants have failed to establish that the manager release releases Spivak from liability for all of those claims. Therefore, Spivak’s motion for dismissal based on a claimed release is denied.
In the alternative, Greenwald and Spivak move for partial summary judgment on their third counterclaim, determining that they are entitled to indemnification, as to TIC’s claims against them, by reason of provisions contained in the operating agreement. Movants have set forth no basis for such a determination, in the case of Greenwald, because they have cited no provision of the operating agreement which provides for his indemnification by TIC under any circumstances whatsoever.
Nor have defendants established that Spivak is entitled to indemnification with regard to the claims asserted against him. Section 5.05.1 of the operating agreement provides that:
“[TIC] shall indemnify any Manager who was or is a party * * * to any * * * pending or completed action, suit or proceeding by reason of the fact that he or she is or was a Manager of [TIC] * * * to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit.”
Spivak’s alleged liability in this action is predicated not merely upon his status as a former manager of TIC, but rather, as previously stated, upon acts which were allegedly performed by him beyond the scope of his authority as TIC’s manager.
*115 Moreover, the indemnification provision expressly provides that it is operative only “to the fullest extent permitted by applicable law.” Limited Liability Company Law § 420, as in effect both at the time when the operating agreement was entered into and now, provides that:
“no indemnification may be made to or on behalf of any * * * manager * * * if a judgment or other final adjudication adverse to such * * * manager * * * establishes * * * that his or her acts were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated * * * .”
Again, since TIC’s claims may result in an adjudication adverse to Spivak, which establishes that his acts were committed in bad faith, or were the result of active and deliberate dishonesty, defendants have failed to establish that Spivak is entitled to complete indemnification with respect to all of those claims.
The branch of Greenwald’s and Spivak’s motion which seeks an award of costs and attorneys’ fees is denied, inasmuch as the operating agreement only provides for such an award to “the prevailing party” in a proceeding (see, operating agreement § 11.08), and neither Greenwald nor Spivak has thus far prevailed in any cause of action or counterclaim in this action.
Conclusion and Order
For the foregoing reasons, it is hereby ordered that the motion of defendants Jonathan Greenwald and Kenin Spivak is denied; and it is further ordered that plaintiffs cross motion is granted, to the extent of granting partial summary judgment in favor of plaintiff and against defendants on the complaint’s sixth cause of action, as set forth in the succeeding paragraph, and that the sixth cause of action is severed; and it is hereby adjudged and declared that the note purchase agreement, purportedly made as of January 12, 2001, by and between plaintiff TIC Holdings, LLC and defendant HR Software Acquisition Group, Inc., is null and void, ab initio, and did not transfer any ownership interest which plaintiff had, or may have, in any assets, to HR Software Acquisition Group, Inc.; and it is further ordered that the remainder of the action shall continue.

 This statement applies, a fortiori, with respect to defendants’ contention that the Tripoint release was intended to release the released parties from all claims which TIC might assert against them, without exception.